Wood, J.
The first material question which we are called upon to determine is, whether, by a notice brought home to the knowledge of the plaintiff, the defendants can limit their responsibility, or exonerate themselves from it altogether? I know of no question, at the present time, more deeply interesting to the community, and it is of great importance that it should be settled on just and solid principles. There have been, within the last half century, many conflicting opinions amongst the English judges. The current decisions, which prevailed at Westminster, and, in such cases, reduced the defendants’ liability, beyond a certain amount, to that of an ordinary bailee, not chargeable, where he exercises such diligence as a prudent man would take of his own affairs, are utterly abolished by an act of parliament, as an innovation upon the common law. It has, also, there been frequently expressed, as the regret of the English bench, that there had ever been a departure from the rule applicable to common carriers, in general, however rigid it may have been considered,-148] in exacting a compliance *with the terms of their obligations, as imposed by the common law rule, and which is so ably vindicated by Lord Holt. 1 Vin. Ab. 219.
Judge Story, whose authority is entitled to great consideration and respect, gives it, as his opinion, that such a notice, brought .home to the owner of the goods, discharges the carrier from liability, excepting in cases of fraud or gross negligence. Story on Bailments, 355, secs. 554, 559. With his authority, the recent decisions in the Supreme Court of New York are directly at issue. Amidst these conflicts of opinion, the question, for the first time, being before this court for adjudication, we feel ourselves entirely at liberty, to settle the rule, which, in our view, is most consistent with the general analogies of the law, and the best calculated to *149 secure the safety, protect the rights, and promote the interests of the community at large.
It is probable that opposite decisions, on the subject of these notices, have arisen from the fact that stage proprietors were not, formerly, considered as common carriers, whose liability nothing would excuse but the- acts of God or the public enemies of the country. It is admitted by the defendants’ counsel, in argument, however, that the proprietors of stage-coaches are common carriers, so far as relates to baggage, or other goods carried for hire. Such is doubtless the well-settled law on that subject. Wheaton’s Selwyn, 201; Cole v. Goodwin, 19 Wend. 251. And where they are considered in that light, the liabilities, which the common law imposes on the common carrier, should be permitted to follow.
Can, then, a common carrier, limit his responsibility by notice? It is said, if he can not, it is no longer left to parties to make their own contracts, but the law forces upon them obligations to which they never assented. To this it may successfully be answered that all agreements by which a common carrier would limit his responsibility are against public policy, and are therefore void, for such is the rule of the common law, applicable to contracts of this character. Roll v. Raguet, 4 Ohio, 400; 7 Ohio, 77, pt. 2. The people of Great Britain, after trying the experiment of occasional judicial aberrations for*more than half [149 a century, have, by their legislative authority, cut up by the roots, the influence of such decisions, and returned again to the point of departure, as the polar star of the common law. Why, then,, should we not profit by their'experience, when the opportunity is fairly presented? The rule is now understood to be settled in England, that neither a notice brought home to the owner of the-goods, nor a special agreement, however solemn the form in which it may be made, is permitted to restrict the common law liability of the carrier, either by land or water. Nothing excuses, him from the performance of his contract but the act of God, or the acts of the public enemies of the country.
This rule, it appears to us, is with great propriety applied to the owner of a stage-coach, and to the proprietors of public conveyances for passengers, either by land or water. The parties are-not, unfrequently, placed on very unequal terms. Who has traveled through our great western thoroughfares but knows the dif *150 ferent proprietors of different sections of the route are as numerous, at least, as the relays of horses on the road. The passenger is sure to find as many different rules and regulations as he pays different prices; and at last, with but a moment’s delay, he is informed his baggage, or his limbs, and perhaps his neck, are “at the risk of the owner” and he must stop among strangers by the way, or submit to these interminable impositions!
In Cole v. Goodwin, 19 Wend. 281, it is said by Cowen, Justice* in a very elaborate and very lucid opinion, in which all the authorities, ancient and modern, are collated and reviewed with great care, that although ordinary bailees may make their own terms with their customers, that it is not so with common carriers and innkeepers. He insists that they, from their public employment, owe duties at common law from which public policy demands that they should not be discharged, even by special agreement. His language is: “ The traveler is under a sort of moral duress, a necessity of employing the common carrier under those legal arrangements which allow any number of persons to assume that charac150] ter, and thus discourage *and supersede the provision for other modes of conveyance. M.y conclusion is, that he shall not be allowed, in any form, to higgle with his customer and extort one exception and another, not even by express promise or special acceptance any more than by notice. Admitting that the plaintiff acceded in the clearest manner to the proposition in the notice, that his baggage should be carried on the terms mentioned, I think the contract thus made was void on his part, as contrary to the .plainest principles of public policy. In thus holding, we follow the law as it is expressly admitted by the English judges to have ■ stood at the period when our ancestors declared themselves independent. And while we thus fulfill our constitutional duty, we are not, like Westminster Hall, obliged to lament while we en? •force the law.” This was also an action against stage proprietors ■for the loss of a trunk, and is in direct analogy to the case at bar. 'The same principle is reaffirmed in Clark v. Faxton, 21 Wend. ■153. It is, however, sufficient for us to say, in the present case, that common carriers can not limit their responsibility by notice -brought home to the owner, for that is the point raised on the special ■verdict; but any substantial distinction between a notice brought home, and an express special contract to restrict responsibility, is mob easily perceived.
*151 The defendants, then, being responsible to the plaintiff in this, action, the next inquiry is, how far does their liability extend? It is a fundamental principle, laid down in the books, that the common carrier is liable in respect to his reward, which is to be in proportion to the risk. Lord Holt determined that a hackney coachman was not liable for the„loss of a trunk of a passenger, unless a distinct price had been paid for its conveyance. 1 Vin. Ab. 220. But it is now settled that stage coachmen are responsible for the baggage of a passenger, and that the reward for conveying the baggage is included in the passenger’s fare. 1 Wheat. Selwyn, 301, n. 1; 9 Wend. 115.
■ The rule, however, only includes baggage, and what is signified by the use of that term in the sense in which it is used in the books is perhaps nowhere precisely defined, though many judges *have expressed an opinion what it is not. But it appears [151 to us, that whatever forms the necessary appendages of the traveler may be legitimately considered as baggage, and placed in his trunk for conveyance. In 9 Wend. 117, the opinion is advanced by the court, that money sufficient to defray the expenses of the journey may be considered.as baggage. In other words, the passenger need not keep it about liis person, but may place it in his trunk, and it will be covered by the liability of the carrier. Why not so of a watch ? It is a convenient and necessary appendage of a traveler. If valuable, to avoid a thousand accidents incident to the way, he carefully places it in his trunk, for use at the end of his journey, shall it be said it is not in its proper place, and that such negligence of the owner excuses the carrier for its loss ? Or shall it bo said, that it is such a concealment by the owner of a valuable article, which he ought to have disclosed, as is evidence of fraud, and therefore exonerates the carrier from liability ? We hold the carrier is responsible in either point of view. That the watch was baggage, and in its proper place, if the owner saw fit in his discretion to place it there, a majority of the court are clear in the opinion. And, however valuable an article of baggage may be, it seems now to be well settled by the authorities, that the owner is not bound to disclose such peculiar value to the carrier, unless inquiry be made. If the carrier make no inquiry, and no artifice is made use of to mislead him, he will be answerable for the logs, however great the value may be. Jones on Bailment, 105 ; 2 Kent Com. 468; 5 Bing. 217; 4 Bing. 218. But all the author- *152 itics are agreed, that if any deception is intentionally practiced f the fraud avoids the contract. Story on Bailment, 364. The watch is the only item in this case, the value of which it is claimed should be excepted from the amount of damages, provided the defendants can not limit their responsibility by notice brought to the knowledge of the plaintiff, and it therefore follows, as the result of our opinion, that the plaintiff is entitled to recover for the whole amount, with interest, as found by the jury, and for which judgment will be entered.
Judgment for the plaintiff.