The Chicago and Northwestern Railway Company

*v.*

Annie Dunleavy, Admx.

*Filed at Ottawa June 15, 1889.*

1. Negligence—*persons on right of way—general duty of railroad companies.* It can not be said that railroad companies owe no duty of care to those who are rightfully on their right of way, even though the general public be excluded therefrom.

2. Same—*speed of railroad trains in cities.* The running of a railway train at a speed of thirty-five to forty miles an hour at the place of an accident, in a thickly settled portion of a large city, is of itself a fact for the consideration of a jury, as tending to show negligence on the part of the railway company operating the same, and is sufficient to justify an inference to that effect.

Syllabus.

3. In an action against a railway company for negligently killing a person in a large and populous city, the defendant asked the court to instruct the jury, that as a matter of law applicable to the case under the pleadings, the company had a right to run its engine and train, at the time and place of the injury, at any rate of speed consistent with the safety of its employes and the property on its train,—which was refused. The declaration showed no ordinance in relation to the speed of trains in the city: *Held*, that the instruction was properly refused, as wholly ignoring the common law duty of the company to regulate the speed of its trains with regard to the public safety.

4. Railway companies, where there is no express statute or ordinance on the subject, are bound by the rules of the common law to exercise their franchises with a due regard to the interests, the welfare and safety of the public. They are not at liberty to adopt the same rates of speed in a densely settled city as in the country, though such speed therein may be as safe for employes and property on their trains as in the country.

5. SAME—*railroad signals in a city—failure to ring a bell.* Proof of a city ordinance requiring railway companies to ring a bell continuously while their trains are in motion within the city, and the testimony of witnesses tending to show that no bell was rung by those in charge of a train at the place of an accident, or other warning given, until after a person was struck, tending to show the breach of an ordinance, is a sufficient basis for an inference by the jury, of negligence.

6. SAME—*contributory and comparative negligence—presumption.* In an action against a railway company to recover for the killing of a person while lawfully on the company's track, the defendant asked the court to instruct the jury to the effect that if the deceased could, by the exercise of ordinary care and prudence on his part, have seen or ascertained the approach of the train in time to avoid the accident, even if the necessary signals were not given by the company or its servants in charge of the train, then it was immaterial whether such signals were given or not, and the neglect to give them would not furnish sufficient ground for a recovery: *Held*, that the instruction was properly refused.

7. In the same case the court instructed the jury, that if the deceased, by the exercise of ordinary care, could have seen the approach of the train, then the law made it his duty to see it, and that if he failed in such duty, his failure would bar a recovery, unless the evidence showed that the defendant or its servants were guilty of negligence so gross as to amount to a willful disregard of the rights or the safety of the public: *Held*, that the proper rule as to comparative negligence was stated in the instruction with substantial accuracy, and was as favorable as the defendant had a right to ask.

| | |
|---|---|
| 129 | 132 |
| 156 | 251 |
| 157 | 604 |
| 46a | 385 |
| 47a | 20 |
| 48a | 559 |

| | |
|---|---|
| 129 | 132 |
| 162 | 189 |
| 53a | 78 |
| 53a | 429 |
| 53a | 483 |
| 54a | 551 |

| | |
|---|---|
| 129 | 132 |
| 60a | 174 |
| 60a | 394 |
| 61a | 266 |
| 62a | 212 |

| | |
|---|---|
| 129 | 132 |
| 164 | 521 |
| 65a | 349 |

| | |
|---|---|
| 129 | 132 |
| 166 | 628 |
| 67a | 501 |
| 67a | 627 |

| | |
|---|---|
| 129 | 132 |
| 168 | 46 |
| 168 | 614 |
| 168 | 645 |
| 70a | 679 |

| | |
|---|---|
| 129 | 132 |
| 170 | 54 |
| 173 | 291 |
| 71a | 365 |

| | |
|---|---|
| 129 | 132 |
| 74a | 361 |
| 75a | 41 |

| | |
|---|---|
| 129 | 132 |
| 175 | 306 |
| 175 | 474 |
| 77a | 439 |

| | |
|---|---|
| 129 | 132 |
| 80a | 520 |
| 80a | 682 |
| 81a | 152 |

| | |
|---|---|
| 129 | 132 |
| 82a | 615 |

| | |
|---|---|
| 129 | 132 |
| 84a | 536 |

| | |
|---|---|
| 129 | 132 |
| 181 | 326 |

| | |
|---|---|
| 129 | 132 |
| 182 | 274 |
| 183 | 119 |

| | |
|---|---|
| 129 | 132 |
| 184 | 391 |
| 184 | 392 |
| 86a | 261 |
| 87a | 423 |
| 88a | 44 |

| | |
|---|---|
| 129 | 132 |
| d90a | 14442 |

| | |
|---|---|
| 129 | 132 |
| 190 | 6307 |
| f94a | 2125 |
| 94a19326 | |
| 94a20459 | |
| 94a16469 | |

| | |
|---|---|
| 129 | 132 |
| f192 19 | 32 |
| 192 15 | 33 |
| 192 19 | 34 |
| 192 15 | 35 |
| 192 15 | 518 |

| | |
|---|---|
| 129 | 132 |
| 197 | 339 |
| 100a | 377 |
| 100a 11 | 408 |
| 101a 14 | 373 |

| | |
|---|---|
| 129 | 132 |
| 212 22 | 278 |

Syllabus.

8. The defendant asked the court to instruct the jury, that if they believed, from the evidence, that if the deceased had looked and listened for approaching trains, he could, by the exercise of either of these faculties, have discovered the approaching engine in time to avoid the accident, the presumption of law would be that he did know of the approach of said engine,—which was refused: *Held*, that the instruction was clearly erroneous, there being no legal presumption by virtue of which the deceased, if he could have discovered the approaching train by either looking or listening, must be deemed to have actually known that the engine was approaching, nor is there any rule of law which, under the circumstances stated, would treat him as though he had actual knowledge of its approach.

9. A failure to look or listen, especially when it affirmatively appears that looking or listening might have enabled the party exposed to injury to see the train, and thus avoid being injured, is evidence tending to show negligence, but it is not conclusive evidence, so that a charge of negligence can be predicated on it as a matter of law. There may be circumstances excusing the party from looking or listening, and that being so, the mere failure to look or listen can not be pronounced negligence *per se.*

10. Special verdicts—special finding of facts—*distinction—requisites—form, etc.* The recent statute, so far as it relates to special verdicts, is merely declaratory of the common law. It has been competent for juries, since the statute of 13 Edw. 1, to find a general verdict, or, when they have any doubt as to the law, to find a special verdict, and refer the law arising thereon to the decision of the court.

11. The jury in a special verdict must find the facts, and not the mere evidence of facts, so as to leave nothing for the court to determine except questions of law. All the facts essential to the right of the party in whose favor the judgment is to be rendered must be found. Finding sufficient evidence, *prima facie*, to establish such facts, is not sufficient. But if probative facts are found from which the court can declare that the ultimate facts necessarily result, the finding will be sufficient. Such a verdict can not be aided by intendment, and, therefore, any fact not ascertained by it will be presumed not to exist.

12. By a special verdict, the jury, instead of finding for either party, find and state all the facts at issue, and conclude conditionally, that if, upon the whole matter thus found, the court should be of opinion that the plaintiff has a good cause of action, they then find for the plaintiff, and assess his damages; if otherwise, then for the defendant.

13. A special finding by the jury upon material questions of fact submitted to them under our recent statute, is not a special verdict, but an essentially different proceeding. A special verdict can not be found when there is a general verdict, but the special findings of fact provided

for by the statute can be required only in case a general verdict is rendered. As both forms of verdict are provided for by the same statute, they must be construed together as being *in pari materia*.

14. The material questions of fact authorized to be submitted to the jury are not such as relate to mere evidentiary facts, but they are restricted to those ultimate facts upon which the rights of the parties directly depend. Requiring the jury to find mere probative facts would be merely requiring them to find the evidence, and not the facts they may tend to prove. Doubtless a probative fact from which the ultimate fact necessarily results would be material, as then the court could infer such ultimate facts as a matter of law.

15. The provision of the statute, that when a special finding of fact is inconsistent with the general verdict the former shall control, necessarily implies that the fact to be submitted shall be one which, if found, will in its nature be controlling,—which can never be the case with a mere evidentiary fact. A fact which merely *tends* to prove a fact in issue, without actually proving it, can not be said to be, in any legal sense, inconsistent with a general verdict, whatever that may be.

16. The common law requires the unanimous consent of all the jurors to their verdict. Upon all matters which they are required to find they must be agreed, but the jurors are not required to reach their conclusions by the same method of reasoning. To require unanimity, not only in the result, but also in each of the successive steps leading to such result, would be practically destructive of the system of jury trials. For this reason a party has no right, under the guise of submitting questions of fact to the jury, to require them to give their views upon each item of evidence, and thus practically subject them to a cross-examination.

17. In an action against a railway company to recover for the death of a person through negligence, the defendant asked the court to submit this special question to the jury: "What precaution did the deceased take to inform himself of the approach of the train which caused the injury?" *Held*, that what the deceased did to inform himself of the approach of the train was material only as tending to show reasonable care on his part, or the want of it; that his acts in that behalf were facts which were merely evidentiary in their nature, and that the question was properly refused.

18. The court, in place of the question above given, substituted and submitted in its stead this: "Was the deceased exercising reasonable care for his own safety at the time he was killed?" *Held*, that the question substituted by the court submitted a material and controlling fact, and one that could properly be made the subject of a special finding.

19. In the same case the jury were specially asked these questions: "Did the deceased look to ascertain if the train in question was ap-

proaching?"  "Did the deceased listen to ascertain if said train was approaching?"  The jury answered both, "Don't know:"  *Held*, questionable if objection to the form of the answer was not waived by failure to interpose the same before the jury was discharged; also, that the questions called for a finding of merely evidentiary facts, and therefore a negative answer could not have affected the general verdict.

20.  This court can not look to the evidence to determine whether special findings of the jury are inconsistent with the general verdict, so that the latter must be held to be controlled by the former.  All reasonable presumptions will be entertained in favor of the verdict, while nothing will be presumed in aid of the special findings of fact. The inconsistency must be so irreconcilable as to be incapable of being removed by any evidence admissible under the issues.

21.  Instruction—*repeating*.  There is no substantial error in the refusal of a proper instruction, when others stating the same legal principle in a different form, but as available for the party complaining, are given.

22.  Practice—*directing what the verdict shall be*.  The asking of an instruction to find for the defendant is in the nature of a demurrer to the evidence, and is equivalent to an admission upon the record of every fact and every conclusion in favor of the opposite party which the evidence conduces to prove,—in other words, every fact which the jury might have inferred from it in favor of such opposite party.  Such an instruction should not be given except when there is a substantial failure of evidence tending to prove the plaintiff's cause of action, or some material fact necessary to establish it.

23.  In considering the propriety of an instruction to find for the defendant, the court has nothing to do with any question as to the preponderance of the evidence, or the credibility of the witnesses, or the force to be given to the evidence having a tendency merely to impeach their veracity.  The only question is, whether any evidence was given, which, if true, tended to support a verdict for the plaintiff.

Appeal from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. John P. Altgeld, Judge, presiding.

Mr. W. C. Goudy, and Mr. W. B. Keep, for the appellant:

Where the whole evidence is insufficient to support a verdict for the plaintiff, it is the duty of the court to instruct the jury to find for the defendant.  *Phillips* v. *Dickerson*, 85 Ill. 15; *Reed* v. *Deerfield*, 8 Allen, 524; *Simmons* v. *Railroad Co.*

110 Ill. 346; *Martin* v. *Chambers,* 84 id. 579; *Frazer* v. *Howe,* 106 id. 573; *Railroad Co.* v. *O'Conner,* 115 id. 261; *Doane* v. *Lockwood,* id. 492; *Bartelott* v. *Bank,* 119 id. 269.

In the following cases the practice seems to have been to entertain the motion after hearing the evidence of the defendant: *Reed* v. *Deerfield,* 8 Allen, 524; *Improvement Co.* v. *Munson,* 14 Wall. 342; *Randall* v. *Railroad Co.* 109 U. S. 478; *Herbert* v. *Butler,* 97 id. 318. And that practice is recommended by this court in *City of Mattoon* v. *Fallin,* 113 Ill. 249.

The regulation requiring a bell to be rung, being intended for the protection of persons on the highway, the failure to give the notice thereby prescribed is not negligence as to the railway servants working on the line; nor as to trespassers on the line; nor as to persons who, although on the highway, are not intending to cross the line; nor as to passengers in trains; nor as to travelers approaching the line on a private way or in a blind alley; nor as to travelers approaching the line on a private way running through railway yards; nor as to one who ties his team on the highway near a crossing. Patterson on Railway Accident Law, sec. 160; *Railroad Co.* v. *Eininger,* 114 Ill. 79.

The court erred in refusing to require the jury to answer certain questions of fact, and the finding on the second and third propositions is equivalent to finding a want of due care by the deceased.

As to the duty of a person going upon the track, to use his eyes and ears to learn whether a train is approaching, and his negligence in not doing so, see *Tolman* v. *Railroad Co.* 98 N. Y. 202; *Wilcox* v. *Railroad Co.* 39 id. 361; *Williams* v. *Railway Co.* 64 Wis. 1; *Bower* v. *Railway Co.* 61 id. 457; *Railroad Co.* v. *McKean,* 40 Ill. 236; *Railroad Co.* v. *Jacobs,* 63 id. 179; *Railroad Co.* v. *Bell,* 70 id. 102; *Railroad Co.* v. *Houston,* 95 U. S. 697.

The court erred in the refusal of instructions asked by the defendant.

Mr. M. L. Knight, and Mr. Joseph S. Kennard, for the appellee :

As to the law applicable to this case, it is contended that it is not obligatory upon the appellant to ring the bell at viaducts.   It is held by the Supreme Court of Illinois that it is dangerous and gross negligence to drive trains at a high rate of speed in any portion of populous towns and cities.   *Railway Co.* v. *Knutson,* 69 Ill. 103 ;  *Railway Co.* v. *Ryan,* 70 id. 211 ;  *Railroad Co.* v. *Engel,* 84 id. 397 ;  *Railway Co.* v. *Harmon,* 47 id. 298 ;  *Railroad Co.* v. *Dickson,* 63 id. 151.

The special findings, as a whole, are consistent, and show that legal and proper conclusions were reached.

This court will not reverse when substantial justice has been done.   *Jones* v. *Railroad Co.* 68 Ill. 381 ;  *Railway Co.* v. *Ryan,* 70 id. 212 ;  *Railroad Co.* v. *Hutchinson,* 120 id. 587 ;  *Railroad Co.* v. *Haskins,* 115 id. 300.

Mr. Justice Bailey delivered the opinion of the Court :

This was an action on the case, brought by Annie Dunleavy, administratrix of the estate of John Dunleavy, deceased, against the Chicago and Northwestern Railway Company, to recover damages under the statute for the death of the plaintiff's intestate.   The declaration consisted of nine counts, to the fifth, sixth and seventh of which a demurrer was sustained.   To the remaining counts the defendant pleaded not guilty, and on trial before the court and a jury, the issues were found for the plaintiff and her damages assessed at $1800, and for that sum and costs, the court, after denying the defendant's motion for a new trial, gave judgment for the plaintiff.   Said judgment was affirmed by the Appellate Court on appeal, and by a further appeal the record is now brought to this court.

The first count of the declaration alleges that the defendant, on the 26th day of July, 1886, by its servants, ran one of its locomotive engines with a train of freight cars thereto attached,

from east to west over one of its tracks under a viaduct at Blue Island avenue, in the city of Chicago; that the plaintiff's intestate was then and there in the employ of said city cleaning and painting the iron columns, etc., of said viaduct, and that "the said train was, by and through the negligence, carelessness and improper conduct of the said defendant, through its servants in the premises, run at a high and dangerous rate of speed," and that while being so run, it was driven against and upon said Dunleavy, whereby he was instantly killed. The second count alleges that the defendant, through its servants, "so carelessly, improperly and unskillfully managed and conducted said engine and train, that the said John Dunleavy was forcibly knocked down by said engine and train" and thrown under the wheels of the train and instantly killed. The third count sets up an ordinance of said city requiring the bell of each locomotive engine to be rung continually while running within the city, and alleging that the defendant's servants in charge of said train failed to comply with said ordinance, and that in consequence of such failure said Dunleavy was killed. The fourth count is substantially like the second. The eighth count alleges that the engineer and fireman could, by looking, have seen Dunleavy standing at his work, and by sounding a whistle have given him notice of the approach of a train, but that they failed to sound the whistle, and that in consequence of such failure said Dunleavy was killed. The ninth count alleges substantially the same act of negligence as the eighth, though in different language. Each count alleges in proper form that Dunleavy at the time he was killed, was in the exercise of due care.

At the close of the trial the counsel for the defendant asked the court to instruct the jury that the evidence in the case was insufficient to sustain a verdict for the plaintiff, and that their verdict should therefore be for the defendant. This instruction the court refused to give, and such refusal is assigned for error.

A prayer for an instruction of this character is in the nature of a demurrer to the evidence, and is equivalent to an admission upon the record of every fact and every conclusion in favor of the opposite party which the evidence conduces to prove, in other words, every fact which the jury might have inferred from it in favor of such opposite party. Such instruction should not therefore be given except where there is a substantial failure of evidence tending to prove the plaintiff's cause of action, or to prove some material fact necessary to establish it.

The instruction asked was based upon the theory that there was a substantial failure of evidence tending to prove the negligence charged against the defendant. In considering the propriety of said instruction, we have nothing to do with any question as to the preponderance of the evidence, or the credibility of the witnesses, or the force to be given to the evidence having a tendency merely to impeach their veracity. The only question is, whether any evidence was given which, if true, would have tended to support a verdict for the plaintiff.

Upon the question of the speed of the train at the time Dunleavy was killed, the witnesses for the plaintiff testified that it was moving very fast, some of them fixing the speed at from thirty to thirty-five miles per hour. Such speed, at the place where the accident happened, in a thickly settled portion of a great city, was of itself a fact for the jury to consider as tending to show that the defendant was guilty of negligence, and was sufficient to justify an inference to that effect. The city ordinance requiring a bell to be rung continually while the train was in motion at the place in question was proved, and the testimony of a number of the plaintiff's witnesses tended to show that no bell was rung or other warning given until after Dunleavy was struck. This evidence, tending as it did to show a breach of a municipal ordinance, was also a sufficient basis for an inference by the jury of negligence. The circumstances under which the plaintiff's intestate was killed, and which need not here be stated in detail, clearly tended to

establish a causal relation between such acts of negligence and the collision which resulted in his death. There was also evidence, partly direct and partly circumstantial, tending to show the exercise of ordinary care on the part of the deceased. Manifestly then the case was not one where a demurrer to the evidence could have been sustained, and the court therefore properly refused to instruct the jury to find a verdict for the defendant.

The next questions to be considered are those which relate to the special findings of the jury. Upon this branch of the case it is urged, first, that the court improperly refused to submit certain questions of fact to the jury; second, that certain of the questions of fact submitted were not properly answered; and, third, that the special findings of fact are inconsistent with the general verdict. The statute under which special findings may be required is but recent, and the rules of practice thereby established have never before been presented to this court for its consideration. We must therefore look mainly to the statute itself for our guide in determining the propositions now raised. The statute is as follows:

Section 1. "That in all trials by jury in civil proceedings in this State in courts of record, the jury may render, in their discretion, either a general or a special verdict; and in any case in which they render a general verdict, they may be required by the court, and must be so required on request of any party to the action, to find specially upon any material question or questions of fact which shall be stated to them in writing, which questions of fact shall be submitted by the party requesting the same to the adverse party before the commencement of the argument to the jury.

Sec. 2. "Submitting or refusing to submit a question of fact to the jury when requested by a party as provided by the first section hereof may be excepted to and be reviewed on appeal or writ of error as a ruling on a question of law.

Sec. 3'. "When the special finding of fact is inconsistent with the general verdict, the former shall control the latter and the court may render judgment accordingly."

This statute, so far as it relates to special verdicts, is merely declaratory of the common law. It has been competent for juries at common law, since the statute of 13 Edward 1, to find a general verdict, or when they have any doubt as to the law, to find a special verdict, and refer the law arising thereon to the decision of the court. By a special verdict, the jury, instead of finding for either party, find and state all the facts at issue, and conclude conditionally, that if upon the whole matter thus found, the court should be of the opinion that the plaintiff has a good cause of action, they then find for the plaintiff, and assess his damages; if otherwise, then for the defendant. 2 Tidd's Practice, (Am. ed.) 897, and note.

The rules of law as to special verdicts and their requisites have long been settled both in this country and in England. Thus, it is held that they should find facts, and not the mere evidence of facts, so as to leave nothing for the court to determine except questions of law. *Vincent* v. *Morrison,* Breese, 227; *Brown* v. *Ralston,* 4 Rand. 504; *Seward* v. *Jackson,* 8 Cow. 406; *Henderson* v. *Allens,* 1 Hen. & Mun. 235; *Hill* v. *Covell,* 1 N. Y. 522; *Langley* v. *Warren,* 3 id. 327; *Kinsley* v. *Coyle,* 58 Pa. St. 461; *Thompson* v. *Farr,* 1 Spears, 93; *Leach* v. *Church,* 10 Ohio St. 149; *LaFrombios* v. *Jackson,* 8 Cow. 589. To authorize a judgment upon a special verdict, all the facts essential to the right of the party in whose favor the judgment is to be rendered, must be found by the jury; finding sufficient evidence, *prima facie,* to establish such facts, is not sufficient. *Blake* v. *Davis,* 20 Ohio, 231; *Hambleton* v. *Dempsey,* id. 168. If probative facts are found from which the court can declare that the ultimate facts necessarily result, the finding is sufficient. *Alhambra Addition Water Co.* v. *Richardson,* 72 Cal. 598; *Coveny* v. *Hale,* 49 id. 552. A special verdict cannot be aided by intendment, and therefore any fact not ascertained

by it will be presumed not to exist. *Lee* v. *Campbell,* 4 Porter, 198; *Zumull* v. *Watson,* 2 Munf. 283; *Lawrence* v. *Beaubun,* 2 Bailey, 625.

It is manifest of course that a special finding by a jury upon material questions of fact submitted to them under the provisions of the statute is not a special verdict, but an essentially different proceeding. A special verdict cannot be found where there is a general verdict, but the special findings of fact provided for by the statute can be required only in case a general verdict is rendered. But while this is so, much light in relation to special findings upon questions of fact, and their office and objects, may be derived from the rules applicable to special verdicts. Both forms of verdict are provided for by the same statute, and they must therefore be construed as being *in pari materia.*

In giving construction to the statute, the first, and perhaps the most important question, relates to the scope and meaning of the phrase, "material question or questions of fact." May such questions relate to mere evidentiary facts, or should they be restricted to those ultimate facts upon which the rights of the parties directly depend? Evidently the latter. Not only does this conclusion follow from analogy to the rules relating to special verdicts, but it arises from the very nature of the case. It would clearly be of no avail to require the jury to find mere matters of evidence, because, after being found, they would in no way aid the court in determining what judgment to render. Doubtless a probative fact from which the ultimate fact necessarily results would be material, for there the court could infer such ultimate fact as a matter of law. But where the probative fact is merely *prima facie* evidence of the fact to be proved, the proper deductions to be drawn from the probative fact presents a question of fact and not of law, requiring further action by the jury, and it cannot therefore be made the basis of any action by the court. Requiring the jury to find such probative fact is merely requiring them to find the

evidence and not the facts, and results in nothing which can be of the slightest assistance to the parties or the court in arriving at the proper determination of the suit.

The view we take is strongly fortified by the provision of the third section of the statute, that, when a special finding of fact is inconsistent with the general verdict, the former shall control. This necessarily implies that the fact to be submitted shall be one which, if found, may in its nature be controlling. That can never be the case with a mere evidentiary fact. A fact which merely *tends* to prove a fact in issue without actually proving it, can not be said to be, in any legal sense, inconsistent with a general verdict, whatever that verdict may be. Such inconsistency can arise only where the fact found is an ultimate fact, or one from which the existence or non-existence of such ultimate fact necessarily follows, and that is never the case with that which is only *prima facie* evidence of the fact sought to be proved.

The common law requires that verdicts shall be the declaration of the unanimous judgment of the twelve jurors. Upon all matters which they are required to find they must be agreed. But it has never been held that they must all reach their conclusions in the same way and by the same method of reasoning. To require unanimity not only in their conclusions but in the mode by which those conclusions are arrived at would in most cases involve an impossibility. To require unanimity therefore, not only in the result but also in each of the successive steps leading to such result, would be practically destructive of the entire system of jury trials. To illustrate, suppose a plaintiff trying his suit before twelve jurors, should seek to prove a fact alleged in his declaration by giving evidence of twelve other facts, each having an independent tendency to prove the fact alleged. The evidence of each probative fact, or the conclusions to be drawn from it, might appeal with peculiar force to the belief or judgment of some one of the jurors, but less so to his fellows. The cumulative effect of all the

evidence might be such as to leave no doubt in the mind of any member of the panel as to the truth of the fact alleged, still, if the jury were required to find specially as to each probative fact, no one of the twelve facts would be at all likely to meet with the unanimous concurrence of the entire jury. As to each they would be compelled to confess their inability to agree, or what would be its equivalent, say they did not know or could not tell, which, if we apply the rules governing special verdicts, would be tantamount to a finding that the fact was not proved or did not exist. If such finding should be required, and should be given the effect of controlling the general verdict, the result would be, that under such system of trial, general verdicts could but seldom stand.

However natural the curiosity parties may have to know the precise course of reasoning by which jurors may arrive at verdicts either for or against them, they have no right, under guise of submitting questions of fact to be found specially by the jury, to require them to give their views upon each item of evidence, and thus practically subject them to a cross-examination as to the entire case. Such practice would subserve no useful purpose, and would only tend to embarrass and obstruct the administration of justice; and we may further say that such practice finds no warrant in our statute.

We are referred to one case in another State, where, in a suit for personal injuries against a railroad company, the defendant was permitted, under a statute somewhat similar to ours, to put to the jury no less than one hundred and thirty-six interrogatories as to the facts, covering, apparently every possible phase of the evidence. The judgment against the railroad company was reversed for an erroneous instruction to the jury as to the form of their answer to questions where the evidence was not sufficient, but no suggestion seems to have been made that any portion of the questions put to the jury were improper. Whatever may be the view of such practice

taken by the courts of other States, we are unwilling to give our countenance to its adoption here.

In the present case the defendant's counsel prepared and submitted fifteen questions of fact upon which the court was asked to require the jury to make special findings. Of these the eleventh and twelfth were refused. The first was modified and submitted to the jury in its modified form. The residue of the questions were submitted as asked. We do not understand that the defendant is now complaining of the action of the court in relation to its eleventh and twelfth questions of fact. The first, as prepared by the defendant's counsel, was as follows :

1. "What precaution did the deceased take to inform himself of the approach of the train which caused the injury?"

This was modified by the court so as to read as follows :

1. "Was the deceased exercising reasonable care for his own safety at the time he was killed?"

The ultimate fact which it was incumbent upon the plaintiff to prove, and which the defendant sought to disprove, was, that the deceased, at the time he was killed, was in the exercise of due care. That was one of the issues made by the pleadings, and it was one of the ultimate facts upon which the plaintiff's right to recover necessarily depended. What the deceased did to inform himself of the approach of the train was material only as tending to show reasonable care on his part or the want of it. His acts in that behalf, then, whatever they may have been, were facts which were merely evidential in their nature, and while they doubtless would have had a tendency to prove reasonable care or the contrary, there were none of them, so far as the evidence shows, which would have been conclusive of that question. The question, then, as submitted by the defendant's counsel, sought to obtain a finding as to mere probative facts, and the court therefore properly refused to require the jury to answer it. The question substituted by the court submitted to the jury a material and

controlling fact, and one which could be properly made the subject of a special finding.

Complaint is made to the answers given by the jury to the fourth and fifth questions. Those questions were as follows:

4. "Did the deceased look to ascertain if the train in question was approaching?

5. "Did the deceased listen to ascertain if said train was approaching?"

To both of these questions the jury answered: "Don't know." It is perhaps questionable whether the defendant, in order to avail itself of the objection that no proper answer was made to these questions, should not have made it at the time the verdict was returned and before the jury were discharged, for then the jury might have been required to complete their verdict by making proper answers. *Moss* v. *Priest,* 19 Abb. Prac. 314. But however that may be, it is manifest that the error, if it be one, cannot have been prejudicial to the defendant unless it can be seen that answers to said questions most favorable to the defendant, which of course would have been answers in the negative, would have constituted a finding inconsistent with the general verdict.

If then we treat said questions as having been answered in the negative, would such answers, either alone or in connection with the answers to the other questions, have constituted a finding necessarily inconsistent with the general verdict? To the second question, viz., "If the deceased had looked before the accident, could he have discovered the approach of the train in time to have avoided the accident?" the jury answered, "Yes," and to the third question, viz., "If the deceased had listened before the approach of said train, could he have discovered the approach of the train in time to have avoided the accident?" they answered, "If he had concentrated his attention in that particular direction, yes." The first question, viz., "Was the deceased exercising reasonable care for his safety at the time he was killed?" was also answered, "Yes."

The question then presents itself, whether, if it be admitted that the deceased neither looked or listened for the train, and also that if he had looked he could have seen it, and if he had listened with his attention concentrated in that direction, he could have heard it in time to avoid the accident, such facts would constitute such conclusive proof of contributory negligence on the part of the deceased as would have barred a re-recovery. Undoubtedly a failure to look or listen, especially where it affirmatively appears that looking or listening might have enabled the party exposed to injury to see the train and thus avoid being injured, is evidence tending to show negligence. But they are not conclusive evidence, so that a charge of negligence can be predicated upon them as a matter of law. There may be various modifying circumstances excusing the party from looking or listening, and that being the case, a mere failure to look or listen cannot, as a legal conclusion, be pronounced negligence *per se.*

In determining whether the special findings are inconsistent with the general verdict so that the latter must be held to be controlled by the former, this court cannot look at the evidence. All reasonable presumptions will be entertained in favor of the verdict, while nothing will be presumed in aid of the special findings of fact. The inconsistency must be irreconcilable, so as to be incapable of being removed by any evidence admissible under the issues. *Pennsylvania Co.* v. *Smith,* 98 Ind. 42; *McComas* v. *Haas,* 107 id. 512; *Redelsheimer* v. *Miller,* id. 485. Under these principles it must be held that there is no necessary or irreconcilable inconsistency between the special findings and the general verdict, especially in view of the fact that the jury, notwithstanding their finding that the deceased did not look or listen, also found that he was in the exercise of reasonable care.

Complaint is made of the refusal of the court to give to the jury certain instructions asked on behalf of the defendant. Two of the instructions so refused are the following:

7. "The jury are instructed, as a matter of law, that if you believe, from the evidence, that the deceased could, by the exercise of ordinary care and prudence on his part, have seen or ascertained the approach of the train in time to have avoided the accident, even if the necessary signals were not given by the defendant, or its servants in charge of the train, then and in that case, it is immaterial whether such signals were given or not, and any neglect to give them, on the part of the defendant, would not furnish sufficient ground for a recovery.

12. "The jury are instructed, as a matter of law, that if you believe, from all the evidence in this case, that if the deceased had looked and listened for approaching trains, he could, by the exercise of either of these faculties, have discovered the approaching engine in time to have avoided the accident, the presumption of law would be that he did know of the approach of said engine. When a person can see they must see, and it will not avail them to say they did not."

Of these instructions, the seventh is based upon the theory that if the deceased failed to exercise ordinary care to see and ascertain the approach of the train, such negligence was sufficient to bar a recovery, wholly irrespective of the degree of negligence of which the servants of the defendant may have been guilty in failing to give the requisite signals; that is to say, even though the defendant's servants may have been guilty of negligence in that behalf so gross as to amount to a wanton or reckless disregard of the safety of the deceased or of the public. That such is not the law is too well established to require the citation of authorities. The proper rule was laid down with substantial accuracy in the thirteenth instruction given at the instance of the defendant, in which it was held, that if the deceased, by the exercise of ordinary care, could have seen the approach of the train, then the law made it his duty to see it, and that if he failed in such duty, his failure would bar a recovery, unless the evidence showed that the defendant or its servants were guilty of negligence so gross

as to amount to a willful disregard of the rights or safety of the public. By this latter instruction the law was laid down as favorably for the defendant as it had a right to ask, and the seventh instruction was therefore properly refused.

The twelfth instruction was clearly erroneous. There is no legal presumption by virtue of which the deceased, if he could have discovered the approaching engine by either looking or listening, must be deemed to have actually known that the engine was approaching; nor is there any rule of law which, under the circumstances here supposed, would treat him as though he had actual knowledge of its approach. Failing to ascertain the approach of the engine when the means of doing so were within his reach would be mere negligence, but failing to get out of the way of the engine when he actually knew of its approach would be suicide.

The following instruction, the seventeenth of those asked by the defendant, was also refused:

"The jury are instructed, as a matter of law, that if you believe, from the evidence in this case, that both the plaintiff and the agents and servants of the defendant were guilty of gross negligence contributing to the injury complained of in this case, your verdict should be for the defendant."

This instruction contained a proposition of law which has been frequently approved by this court, but we are of the opinion that, in view of the rules laid down in various of the instructions given, the defendant could not have been materially prejudiced by its refusal. By the fourth instruction the jury were told that, if the plaintiff had failed to prove that the deceased was in the exercise of ordinary care and prudence for his own safety, she could not recover. The legal effect of a want of ordinary care on the part of the deceased was thus stated in a form just as available for the defendant as it was in the instruction refused. The sixth instruction held, as a matter of law, that ordinary care, when one is surrounded by dangers and his position exposes him to impending disaster,

involves the exercise of the highest degree of vigilance and care, and that the deceased was bound to exercise that degree of care, and that if by its exercise he might have avoided injury, the plaintiff could not recover. In various of the other instructions given, the effect of the negligence of the deceased upon the plaintiff's right to recover was stated, and we think, therefore, that the jury were fully instructed on that question, and that the instruction refused could have given them no material information or assistance not embodied in the other instructions.

The only other ruling of the court in relation to the instructions of which complaint is now made, is its refusal to give the defendant's twentieth instruction, which was as follows:

"The jury are instructed, as a matter of law applicable to this case, that under the pleadings in this case, the defendant, the railway company, had a right to run its engine and train, at the time and place of injury to the deceased, at any rate of speed consistent with the safety of its employes and the property on its train."

The declaration contains no averment of any municipal ordinance of the city of Chicago in relation to the speed of trains. But it cannot be admitted that, in the absence of such ordinance, a railroad company has no duty on that subject to the public. It may be as safe for the employes and property on its train to run its trains thirty, forty or fifty miles an hour through a populous city like Chicago as in the country, but no one would claim that so doing would not be highly dangerous to the general public, or that a railroad company, even in the absence of all municipal regulation, would be at liberty to adopt the same rates of speed in the city as in the country. Railroad companies, where there is no express statute or ordinance, are bound by the rules of the common law to exercise their franchises with a due regard to the interests, the welfare and safety of the public, and in fixing the rate of speed at which their trains may be run, the public safety is a matter which is always entitled to be taken into consideration.

But it is said that at the place where the deceased was killed the general public had no right to be. This may be admitted, but it is nevertheless true that the deceased was rightfully there, and had been working there for such length of time as raises some implication of notice to the defendant of his presence there and of his employment. It cannot be said that railroad companies owe no duty of care to those who are rightfully upon their right of way, even though the general public be excluded therefrom. As the twentieth instruction was, in effect, a denial of such duty, not only to the general public but also to the deceased, it was properly refused.

We are of the opinion that the record contains no material error, and the judgment of the Appellate Court will therefore be affirmed.

*Judgment affirmed.*