## CHICAGO ANDERSON PRESSED BRICK COMPANY
### v.
## MORRIS REININGER, BY NEXT FRIEND.

*Master and Servant—Negligence of Master—Personal Injuries—Dangerous Machine—Infant—Evidence—Instructions—Assumption of Risk—Practice.*

1. It is the duty of an employer upon putting a youthful person to work in a place of danger, to instruct him how to perform the same, and to guard against the danger incident thereto.

2. A caution to "look out" or "be careful" is not enough.

3. A youth of sufficient age, intelligence and discretion to understand and appreciate the risk to which he is exposed, if informed of the dangerous nature of the work in which he is engaged, will be presumed to have assumed the ordinary perils and hazards of such employment, and can not recover for an injury which is the result of the ordinary peril and danger thereof.

4. A party who has encouraged the court to give an instruction wrong in principle, can not be heard to complain, and the principle is as applicable to express or implied assumptions of facts, as to rules of law.

5. It is proper to refuse to submit special questions upon behalf of a defendant, to the jury in a given case, where answers responsive thereto would not be inconsistent with a verdict for the plaintiff.

[Opinion filed July 30, 1891.]

APPEAL from the Circuit Court of Cook County; the Hon. FRANK BAKER, Judge, presiding.

Messrs. S. M. Millard, A. C. Barnes and Hiram Barber, for appellants.

Messrs. Freeman & Walker, for appellee.

Gary, J. The appellee, a boy sixteen years old at the time of the injury of which he complains, sued the appellants for such injury, alleging that it was caused by their setting him to work upon a machine in a manner known to them, but not to him, to be dangerous.

The machine was for pressing brick of dry pulverized clay, and consisted of a horizontal revolving table, five feet in diameter, around the edge of which were arranged eight pairs of molds to receive the clay. The clay was fed down from a spout into the molds, and at the same instant a plunger pressed the clay into the pair of molds next but one to the right hand of those being filled. Of necessity the table had an intermittent motion, standing still for feeding and pressing and revolving to the right when those operations were completed, to bring the next pair of molds in place to be filled and pressed. There was, therefore, one pair of molds filled with clay always, when the machine was in operation, between the feed and the press.

The press consisted of a pair of plungers accurately fitting the molds, and between the frame guiding the plungers and the feed spout, was eleven inches space at the corners toward the center of the table. In making plain brick this machine seems to have been automatic, requiring no aid of hand labor to do its work. The right quantity of clay to make a brick went into each mold, and was pressed into a brick and pushed out of the mold by its own action. But not always was the product plain brick. For ornamental shapes a block, called in the testimony a " gib," was used at the time the appellee was hurt, being put into one mold only of the sixteen, and at each revolution this "gib," when on the side of the machine opposite to the feed and press, required attention, and when in a mold between the feed and press, there would be a surplus of clay at that mold to be removed.

The appellee was doing the work thus necessary, removing the surplus clay with his hand.

The space between the frames of the feed and the press being so narrow, when he removed that surplus he stood with his right side toward the machine and partially between those frames.

It is manifest that as the motion was intermittent, there would be a tendency in the operation of the machine to carry his hand, with which he was removing the surplus, forward, as the mold started under that plunger, if there was room under the frame of the plunger for his hand to pass under.

Whether there was such room, was one of the disputed questions of fact on the trial, and an argument, both oral and printed, has been made here to convince us that the hand of the appellee could not have been thus carried forward with the mold under the plunger, and that to get his hand under it he must and did reach around to the side of that frame toward the center of the table, the frame being open on that side, and put his hand under the plunger from that side.   It is enough to say upon that subject, that we are not so convinced by either the evidence or the argument.   The frame was far enough above the table to permit the arm of the boy to go under it.   In addition to the proper intermittent motion of the machine, sometimes the table moved with jerks, a few inches at a time.

The president of the appellants invented and constructed the machine, and if, to the reflections of a skilled and experienced mechanical engineer, this was a machine dangerous to the operative upon it, thus removing the surplus clay, and more especially, if the arrangement of the parts relatively to each other made it, without adding to its efficiency, unnecessarily dangerous, and if its dangerous character would not be obvious to an unskilled laborer, without mechanical training or education, then it was negligence on the part of the appellants to put the appellee thus at work upon it, at least without fully explaining to him what dangers he must avoid.

The law upon this view of the subject is discussed and many authorities cited in McCormick Harvesting Machine Co. v. Burandt, 37 Ill App. 165.

Chicago Anderson Pressed Brick Co. v. Reininger.

The appellants deny that the machine was, in fact, dangerous, and put in the testimony of a witness, who stated that he had charge of the machine, and whatever little that the boy had to do, showed him how to do the work; told him to look out, be careful of everything on the machine, not to get around the plunger, too close to that, and take his clay out in time. But of this tendency of the machine, especially if it moved with jerks, to carry the hand forward under the plunger, there is no testimony that the appellee was warned.

"When a master engages an inexperienced servant, especially if of tender years and presumed ignorance, and places him in a place of latent or obscure danger, it is the duty of the master to instruct the servant how to do the work, and at the same time be on his guard against the danger." * * * "The jury may well have thought that telling a lad to be careful was not adequate instruction." Thall v. Carnie, 5 N. Y. S. 244.

There is no question as to the amount of the damages. In some way, (as the appellee testifies, by his hand being drawn forward with the mold—as the appellants insist, by his reaching around the frame of the plunger) his right hand got under the plunger and was cut off. The verdict is $3,000.

The court instructed the jury, as follows: "It is a general rule of law that when a man is employed in a factory where machinery is used, the use of which is attended with danger, that the person so employed assumes the ordinary hazards and perils of such employment, and can not recover for any injury received from an accident which is an ordinary peril and danger of the employment he engaged in.

"If a boy is employed in such factory, the rule is that if such boy is of sufficient age, intelligence and discretion to understand and appreciate the risk to which he is exposed, and if he is informed of the dangerous nature of the work in which he is engaged, then he must be held to have assumed the ordinary hazards and perils of such employment, and can not recover for an injury which is the result of the ordinary peril and danger of his employment. In this cause if you believe from the evidence that the plaintiff at and before the time of

the injury knew and appreciated the danger and peril of the work in which he was engaged at the time of the injury, and understood the same, and then chose to engage in the work which exposed him to such perils and danger, he can not recover, and your verdict should be not guilty. And in determining the question whether or not the plaintiff knew, appreciated and understood the perils and dangers of the work in which plaintiff was engaged, you will consider the evidence as to plaintiff's age, as to his previous experience with the machine in question or similar machinery, and all other evidence bearing upon said issue. If, on the other hand, you find and believe from the evidence that the defendant company and its officers knew, or had reason to know, the peril and danger to which plaintiff was and would be exposed while in the work and employment in which he was engaged at the time of the injury, and did not explain or give notice of such danger or peril to the plaintiff, and if you further find that at the time of the injury the plaintiff was not guilty of negligence and was exercising ordinary care, and that from his youth and inexperience he failed to know, understand or appreciate, and in fact did not know, understand or appreciate the risk or danger or peril to which he was exposed in the work in which he was engaged at the time of the injury, and that in consequence he was injured, then the defendant is liable and you should find the defendant guilty." This is a full statement of all the law applicable to the case.

The appellants' brief says, " that the boy was, by direction, put to work on this machine, is not questioned," but they urge that " the court had no right to tell the jury that as a matter of fact, the appellee, at the time of the injury, was engaged in a dangerous service; and yet this assumption runs through the entire instruction."

Admitting, in the abstract, the justice of the criticism, yet the appellants can not complain on that ground, for in several instructions asked by themselves, they recite the dangers of the work. " A party who has encouraged the court to give an instruction wrong in principle, can not be heard to complain of it." McMahon v. Sankey, 35 Ill. App. 341.

The principle is as applicable to express or implied assumptions of facts, as to rules of law.

The appellants asked sixteen instructions, of which, with or without modification, the court gave seven. In that feature the case is very like Fisher v. Stevens, 16 Ill. 397, which we will follow as a precedent.

The appellants asked the court to put to the jury several special questions, but any answer responsive to either of them, would not have been inconsistent with a verdict for the appellee, and therefore it was no error to reject them. C. & N. W. Ry. Co. v. Dunleavy, 129 Ill. 132.

The appellants' witnesses had testified that it would be impossible for the hand of the boy to be drawn under the plunger in the manner he stated it was done.

He then called some boys, who testified that their hands had been thus drawn under, one of whom stated " that is how my thumb was cut." This being in rebuttal of the alleged impossibility, takes it out of the rule laid down in Kolb v. Chicago Stamping Co., 33 Ill. App. 488.

If true, it was as conclusive against the opinion of appellants' witnesses, as the sawdust upon the client's back against the opinion of his lawyer that he could not be put in the calaboose.

On the whole case there is no error, and the judgment is affirmed.

*Judgment affirmed.*