## Independent Dryer Co. v. Livermore Foundry and Machine Co.

1.   SET-OFF—*When to be Pleaded.*—A set-off can only be pleaded of demands existing at the time of the commencement of the suit.

2.   DEPOSITIONS—*Requisites of the Notice.*—Where a deposition shows upon its face that the testimony of the witness, a non-resident, is material and therefore necessary, it is not to the extent of invalidating the deposition that the fact should have been made to appear on the face of the notice.

3.   SAME—*Necessity of Naming Witnesses in the Notice.*—A notice to take the depositions of certain named witnesses "and others" is sufficient to authorize the taking of the depositions of any additional witnesses not specifically named in the notice.

4.   SPECIAL FINDINGS—*And the General Verdict.*—In determining the question whether the special findings are so inconsistent with the general verdict as to control it, all reasonable presumptions will be entertained in favor of the verdict, while nothing will be presumed in aid of the special findings. The inconsistency must be irreconcilable, so as to be incapable of being removed by any evidence admissible under the issues.

5.   RATIFICATION—*By a Principal of Contract Made by an Agent*

Independent Dryer Co. v. Livermore Foundry Co.

*Without Authority.*—Ratification by a principal of contracts made by an agent without authority, is as firmly established as any other doctrine of the law; the only limit to the doctrine is where the principal himself is without power to do the act done by the agent, and even then there must, under many circumstances, exist notice to the other party that the act is beyond the power of the principal.

Assumpsit, for goods sold and delivered. Error to the Circuit Court of Cook County; the Hon. EDWARD F. DUNNE, Judge, presiding. Heard in this court at the October term, 1895. Affirmed. Opinion filed October, 31, 1895.

*Special interrogatories one, two, three, four and five, and answers.*

1. Did the defendant, by its board of directors, ever authorize the purchase from the plaintiff of the goods in question? No.

2. Did said defendant ever approve of said purchase? No.

3. Did said defendant receive said goods? No.

4. Did the said defendant at any time authorize the said W. J. Tanner to purchase said goods and merchandise or any part thereof? No.

5. Did the said defendant ever agree to pay the plaintiff for the said goods and merchandise or any part thereof? Yes.

JAMES W. BEACH, attorney for plaintiff in error.

HOYNE, FOLLANSBEE & O'CONNOR, attorneys for defendant in error.

MR. JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

One J. W. Tanner, who was the vice-president of the plaintiff in error, the Dryer company, bought in its name a bill of goods, amounting to $411.88, from the Livermore company, the defendant corporation. In accordance with Tanner's directions, the goods were shipped to Red Fork, Arkansas, and were charged to the Dryer company on the Livermore company's books, and a bill for them was sent to the Dryer company, at its business office in Chicago. This was in September, 1894.

No objection to the bill or the purchase was made by the Dryer company, until about the time this suit to recover the amount of the bill was begun, when for the first time the authority of Tanner to make the purchase in the name of the Dryer company was denied and payment refused.

When the account matured, the Livermore company wrote to the Dryer company about its payment, and received in reply the following letter, dated January 4, 1895 :

"LIVERMORE FOUNDRY AND MACHINE COMPANY,
229 Second Street, Memphis.

GENTLEMEN : We have yours of recent date in regard to account. Our Mr. Tanner will be in Memphis early next week. We have written him to call on you. Would prefer that you make settlement with him instead of drawing on Chicago.        Yours truly,

INDEPENDENT DRYER COMPANY."

The Dryer company seems to have done business both in Chicago, Illinois, and Memphis, Tennessee, and by the terms of its charter, the object for which it was formed was stated to be " the manufacture and building of dry-kilns, heating apparatus and machinery, and sale thereof," and in its by-laws its object was stated to be " building dry-kilns, heating apparatus, and other like work for profit."

It has not been pointed out to us, and we have been unable to find an accurate description of what the goods were that were sold, but they are spoken of generally as " iron goods," and by one witness it is said, " this bill calls for plows, scrapers—mostly iron goods, in fact."

It is perhaps unimportant what they were, except as their character would have a tendency to justify or otherwise the Livermore company in accepting and relying upon the representations made by Tanner, that they were being bought for the Dryer company, to be used in its business. Some kinds of iron goods would certainly be needed in the line of the Dryer company's business as above stated, and as all of the goods were sent to the same place, we think that the Livermore company had a right to rely upon the statement of Tanner, that all of them were for the use of the Dryer company, of which he was, at the time of making the representation, the vice-president. There is nothing in the record to show but that, by the course of the Dryer company's business, Tanner, its vice-president, had authority to purchase all such goods as his company might need.

True, it is shown by the by-laws of the Dryer company that the president of the company should purchase all material or supplies needed in the business, but it is not pretended that the Livermore company had any knowledge of that by-law, nor does it appear what the actual course of business was in that regard.

But, however that may be, we think that the special finding of the jury that the Dryer company agreed to pay for the goods was justified by the evidence.

It is not disputed but that the Dryer company was immediately informed of the fact that the Livermore company had sold the goods and charged them to the Dryer company, and on the strength of its credit had shipped them to Red Fork, and that it had been done through Tanner, its vice-president.

If the Dryer company had a right to question or deny Tanner's authority, or wished to do so, or did not wish to be responsible for the goods, it was its duty, at once upon being informed, to have interposed an objection. That it performed any duty in that regard is not claimed, and by its failure to do so, the Livermore company lost all opportunity and right to reclaim the goods.

But still further, the Dryer company, on January 4, 1895, nearly three months after the sale, upon being urged for payment of the bill, wrote the letter above set forth.

Under the circumstances, the only fair and honest construction to be placed upon that letter is to treat it as it was treated by the Livermore company, as a recognition by the Dryer company of the obligation it owed, and a request for delay in its enforcement until Tanner could arrive in order to facilitate its own matters with him.

The assigned errors concerning the placing of the cause upon the short cause calendar are not well taken. The affidavit for that purpose is in the form prescribed by the statute, and was sufficient.

It is next urged that it was error to refuse to allow plaintiff in error to file a plea of set-off.

The motion was to allow the defendant (plaintiff in error)

" to file a plea of set-off here, alleging damages because of the bringing of this suit, to the end that we may recover attorney's fees."

Set-off can only be pleaded of demands existing at the time of the commencement of the suit.

Chitty's Pl. (16th Am. Ed.) 464, and notes a and b. Manifestly, damages from bringing the suit do not exist until after the suit is brought, and the motion was properly denied.

Another objection is, that the notice to take the depositions of " Mrs. A. S. Livermore, H. A. Taturn and others," was insufficient, in that it did not state that they were necessary witnesses, and further, that it did not name George Skeene, whose deposition was, in fact, also taken under the commission.

The depositions show on their face that the testimony of the witnesses, who were non-residents, was material, and therefore necessary, and it was not necessary, to the extent of invalidating the depositions, that the fact should have been made to appear on the face of the notice. The notice being to take the depositions of certain named witnesses "and others," was sufficient to authorize the taking of the deposition of an additional witness not specifically named in the notice. Weeks on Depositions, Sec. 246 and cases cited.

The last contention is that the special findings by the jury are inconsistent with the general verdict and should, therefore, control.

The special findings numbered 1, 2, 3 and 4 were in the negative on questions as to whether the board of directors of the Dryer company authorized the purchase of the goods; whether the Dryer company approved of the purchase; whether the said company received the goods; and whether it authorized the purchase of the goods by Tanner; and the finding numbered 5 was in the affirmative, on the question of whether the Dryer company agreed to pay for the goods.

The rule stated in C. & N. W. Ry. Co. v. Dunleavy, 129 Ill. 132 (page 148) is that in determining whether the special findings are inconsistent with the general verdict, so that the latter must be held to be controlled by the former, this

court can not look at the evidence. All reasonable presumptions will be entertained in favor of the verdict, while nothing will be presumed in aid of the special findings of fact. The inconsistency must be irreconcilable, so as to be incapable of being removed by any evidence admissible under the issues.

Whether the board of directors authorized the purchase of the goods is not material if the company agreed to pay for them, and same is true of the approval of the purchase by the company, and of whether it ever received the goods, or gave authority to Tanner to purchase them.

Ratification by a principal of contracts made by an agent without authority, is as firmly established as any other doctrine of law. The only limit to the doctrine is where the principal itself is without power to do the act done by its agent, and even then there must, under many circumstances, exist notice to the other party that the act is beyond the power of the principal.

It can not be contended under the evidence concerning its business, that the Dryer company had no power to have made the purchase of such goods, as were the subject of this contract.

Upon the whole record, we are not warranted in reversing the judgment below, and therefore affirm it.