Williams, J.
The instructions requested by the defendant, the refusal to give which was held by the circuit court to be error, constituting a ground of its judgment of reversal, are as follows:
1. “If you find that the railroad company ran the train which killed Blum over the Greenwood street crossing at a rate of speed greater than that allowed by an ordinance of the city of Marion, and that said crossing was within said city, the railroad company will, nevertheless, not be liable for the death of Blum, if you also find that Blum was guilty of negligence contributing in any degree to his injury.”
2. “Inability to stop after seeing his danger, because the train was running faster than was *220 permitted by a city ordinance, would not clear Blum from the consequences of his own contributory negligencein recklessly driving in front of the train.” •
3. “You are instructed, that if the evidence and circumstances point just as strongly to the negligence of the deceased as to its absence, the plaintiff cannot recover and you should return a verdict for the defendant.”
4. “You are instructed that if the evidence shows that the deceased, Robert J. Blum, was guilty of negligence in attempting to cross the railroad track, the plaintiff is not entitled to recover in this action, however slight the negligence of the deceased was, if it in any way contributed to his injury, and your verdict must be for the defendant. ”
Neither of these instructions is entirely free from objection. The first' and fourth wouLd preclude a recovery if, in their language, the negligence of the deceased contributed “in any degree, or in any way,” however remotely, to the injury which caused his death, and, without regard to the other circumstances of the case; while the rule is, that a party is only required to use ordinary care, and his failure to do so must, to defeat his recovery, contribute directly or as a proximate cause to the injury of which he complains. In Beach on Cont. Neg., section 4, contributory negligence, in its legal signification, is defined to be “such an act or omission on the part of a plaintiff, amounting to a want of ordinary care, as, concurring or co-operating with the negligent act of the defendant, is a proximate cause or occasion of the injury complained of. To constitute contributory negligence there must be a want of ordinary *221 care on the part of the plaintiff, and a proximate connection between that and the injury.’’ And in section 24, it is stated by that author, that: “The essence of contributory negligence is, as has been shown, a want of ordinary care on the part of a plaintiff, which is a proximate cause, an occasion of the injury. We have considered, in the preceding section, the law affecting ordinary care. It remains to set forth the rules of law in regard to that lack of ordinary care as a proximate cause of the injury of which the plaintiff complains. The courts declare, and it is a settled rule of law, that, not only must the negligence of one injured by another’s culpable neglect contribute to produce the injury, but that, if it is to constitute contributory negligence, it must contribute as a proximate cause, and not as a remote cause or mere condition. ”
In 1 Sherman & Redfield on Neg., section 94, it is declared to be the rule that: “The plaintiff’s fault does not affect his right of action, unless it proximately contributed to his injury. It must be a proximate cause, in the same sense in which the defendant’s negligence must have been a proximate cause in order to give any right of action.” And in section 99, it is said: “It is. now perfectly well settled that the plaintiff may recover damages for an injury caused by the defendant’s negligence, notwithstanding the plaintiff’s own negligence exposed him to the risk of injury, if such injury was more immediately caused by the defendant’s omission, after becoming aware of the plaintiff’s danger, to use ordinary care for the purpose of avoiding injury to him. We know of no court of last resort in which this rule is any longer disputed. ” * * * “But, furthermore, the plaintiff should recover, notwithstanding his own negli *222 gence exposed him to the risk of injury, if the injury of which he complains was more immediately caused by the omission of the defendant, after having such notice of the plaintiff’s danger as would put a prudent man upon his guard, to use ordinary care for the purpose of avoiding such injury. It is not necessary that the defendant should actually know of the danger to which the plaintiff is exposed. It is enough if, having sufficient notice to put a prudent man on the alert, he does not take such precautions as a prudent man would take under similar notice. This rule is almost universally accepted. ”
In 2 Thomp. on Neg., page 1151, the' rule is stated as follows: “The negligence of the plaintiff, in order to bar a recovery, must have been a proximate cause of the injury complained of. If the negligence of the plaintiff was only remotely connected with the injury, the plaintiff may recover damages, if notwithstanding such remote negligence of the plaintiff the defendant might have avoided the injury by the exercise of ordinary care. ” Again on page 1152, that author says: “But the negligence of the plaintiff, in order to bar his recovery, must have been so far an efficient cause of the injury that unless be had been negligent, the injury would not have happened; or, as the rule is often expressed, although there may have been negligence on the part of tbe plaintiff, yet unless he could by the exercise of ordinary care have avoided the consequences of the defendant's negligence,, he is entitled to recover.” And in note 2, on page 1151, it is said: “In early cases at nisiprius in England, the rule was laid down that if the plaintiff’s negligence in any toay concurred in producing the injury, he could not
*223 recover. Pluckwell v. Wilson, 5 Car. & P., 375; Hawkins v. Cooper, 8 Car. & P., 473. But this, without more, is now regarded as an inaccurate statement of the law; and, as we have seen (Radley v. London, etc., R. Co., ante, p. 1108), the House of Lords has lately held it error to charge a jury in this or similar language without qualification.” This well settled doctrine as maintained by the foregoing authorities was followed and applied by this court in the case of Railroad Company v. Kassen, 49 Ohio St., 230, and had been recognized and approved in several cases before that.
The second instruction refused is objectionable for the further reason that it assumes the deceased recklessly drove in front of the defendant’s rapidly moving train; while, whether he was negligent in that respect was one of the questions of fact for the determination of the jury upon the evidence. And the third is at variance with the well established rule in this state, that the burden is upon the defendant to make out the defense of contributory negligence, unless the plaintiff’s evidence raises the presumption of such negligence, when he is required to overcome that presumption. If upon the whole evidence contributory negligence, such as would defeat a recovery, be not shown by a preponderance of the evidence, and the negligence. of the defendant be so shown, the action may be maintained. Each party starts in the trial with the presumption that he is free from negligence, and each, therefore, primarily assumes the burden of proving the negligence of the other. This instruction is not less erroneous than would be a charge that if the whole evidence pointed as strongly, but not more so, to the negligence of the defendant, as to the absence of such negligence, *224 the plaintiff would be entitled to recover, there being no contributory negligence shown.
But it is sufficient to say with respect to all of these instructions that the substance of them was embodied in others that were given in the charge at the request of the defendant, some of them in language more compreheiisiveand favorable to the defendant. For instance, the first, and fourth of the instructions refused are, in substance, comprised, in appropriate language, in the following which the court gave at defendant’s request: “You are instructed that, although’ you may find from the evidence that the defendant’s train of cars was running at a high or excessive rate of speed, that would not excuse or overcome the negligence of the deceased, if he was negligent, in attempting to cross the railroad track in front of a rapidly approaching train, without first looking and listening. ” The second is fully covered by the following instruction given at defendant’s request: “The duty of a person to look and listen before crossing a railroad includes the duty to do that which will make looking and listening reasonably effective. If there is a permanent obstruction to sight that will make danger invisible, and a transient noise that would make ib inaudible, it is negligence to go forward at once from a place of safety to a possible danger. Prudence requires delay until the transient noise has abated and hearing again becomes efficient for protection. You are instructed that if the deceased was familiar with the Greenwood street railroad crossing- and drove toward it at a rate of speed such as he was unable to check and stop his vehicle in time to escape a collision with a passing train, after arriving at a point where he must have seen it if *225 he had looked, and where he could have avoided it, he will be guilty of contributory negligence, and the plaintiff cannot recover. ” And the third was given in the following, and equally erroneous charge, also, at the request of the defendant: “Before the plaintiff is entitled to recover in this action, he must establish two propositions: First, that his injury was caused by the negligence of the defendant company, and secondly, that his own negligence did not contribute to his own injury. When a person crossing a railroad track is killed by a collision with a train, the fault is prima facie his own, and his administrator must show affirmatively, that decedent’s fault or negligence did not contribute to the injury, before he is entitled to recover, and this presumption is at least sufficient to require from him an affirmative showing that the circumstances, and decedent’s conduct were such that he was not in fault.”
Indeed it appears from the record that the charge of the court was made up in a great measure of instructions given at the instance of the defendant, on the subject of contributory negligence, covering every phase of the case, repeated in different forms of expression; and there is, in no view, any substantial ground of complaint on the part of the defendant with respect to the instructions which the court declined to give in the charge.
The following is one of the instructions, the giving of which was made a ground for reversing the judgment of the trial court:
‘ ‘If the jury find from the evidence, that the defendant’s servants in charge of the train that killed said Robert J. Blum, gave signals by whistling once and no more, at such distance, if it ex *226 ceeded 100 rods from Greenwood street, that said Robert J. Blum would naturally think that he could safely cross before the train arrived at Greenwood street if he heard such a whistle, and that he did hear it and should further find that no bell was rung, and that said train was going at a greater rate of speed than men of ordinary care and prudence in like employment would have run it under like circumstances and conditions, and that said Robert J. Blum as a reasonable man was thereby deceived and led to believe that he could cross the tracks of said defendant’s railroad in safety, and that if attempting under these circumstances to cross said tracks, without fault or negligence on his part, he was on account of careless^ness upon the part of the servants of said defendant in operating said train at an unusual and dangerous rate of speed, struck and killed, then plaintiff would be entitled to recover if such carelessness was the sole cause of his injuries.”
The objection urged to the charge is, that it makes the defendant liable for the mistake or miscalculation of the person injured. But that, we think, is not its effect. It does no more than hold the defendant responsible for the proximate consequences resulting from the position in which the deceased was induced to place himself by its negligent omission to give the required signals of the approaching train where they might be reasonably expected by persons about to use the crossing, and upon the absence of which they might reasonably rely as an assurance that it was safe to cross over; and, from the running of the train without such signals at an unusual and forbidden rate of speed, whereby persons, who otherwise might cross in safety would be placed in a position of ex *227 traordinary peril. To give the instruction application to the case it was necessary for the jury to find, and they were so told, the existence of the facts thus calculated to mislead the deceased, and further, that he exercised the care of a person of ordinary prudence in forming his conclusion that he could safely cross under the circumstances, and that the injury he received was caused wholly by the negligent acts and omissions of the defendant. If the facts stated were established to the satisfaction of the jury, the deceased was not guilty of contributory negligence which precluded a recovery by his administrator.
The only other instruction given on which the judgment of reversal was predicated, is as follows: “The jury has been taken out to view the scene of this accident twice, the first time for the purpose of being able to understand the testimony, and the second time to witness certain experiments by agreement of both parties. I charge you that you are not to consider as evidence what you saw on the first view; but what jrou saw on the second view that was shown to you by the parties under their agreement you should take and consider as evidence in this case. ’ ’ The record shows that during the progress of the trial, and before the conclusion of the evidence, counsel for defendant moved the court for an order directing the jury to be taken to the crossing where the deceased was killed, at about the same time in the evening, for the purpose of witnessing certain experiments which the defendant proposed to have made in the running of a train of cars there, under circumstances like those present at the accident, for the purpose of informing the jury in regard to the cause and manner of its occurrence. No objec *228 tion was made by plaintiff’s counsel, “and thereupon, ’ ’ as stated in the record, ‘ ‘it is agreed that the jury shall go to said crossing at 7 o’clock this evening, April 14, 1898, in charge of the sheriff to witness certain experiments made with the engine and train there. And thereupon the jury reported at the court house at said hour, and in charge of the sheriff went to the scene of the accident and witnessed certain experiments made with said engine and train, horse and buggy, men seated in the buggy, etc.”
The question made on this charge is whether the jury might properly consider the information obtained from these experiments as evidence in the case; and is, in this form, a new question in this state. We are not aware of any reported decision of this court, in which a like question was involved. It was held in Machader v. Williams, 54 Ohio St., 344, that the preliminary view, authorized by section 5191 of the Revised Statutes, of the property or place involved in a litigation, is merety for the purpose of enabling the jury to apply the evidence offered on the trial. But experiments made in the presence of the jury, with a view of reproducing to their senses, as nearly as may be, the transaction or occurrence, in whole, or in part, which is the subject-matter of investigation by them, would seem to have a different purpose. They serve to put the jury in possession of knowledge important in the determination of the issues on trial, that they could not obtain so readily or accurately from the testimony of witnesses. They are, in a measure, a substitute for oral testimony, and often may áfford evidence more satisfactory and reliable.
In Smith v. State, 2 Ohio St., 511, where the prosecuting witness on a trial of an indictment for mali *229 cions shooting, had testified that he saw and identified the defendant, through a glass window after dark, from the flash of the pistol which he fired, it was held competent for the defendant to prove experiments made by witnesses under similar circumstances, and, as a result of them, that a person could not be so identified. ’ If the testimony of witnesses relating to such experiments, and the information obtained from them furnish competent evidence which the jury may consider in making up their verdict, it is difficult to assign any satisfactory reason wh_y such experiments, when made in the presence of the jury for their information, and by which the results are made obvious to their senses, should not afford evidence of equal, or even greater, force and certainty. Witnesses observing the experiments, when called upon to testify, may imperfectly describe them, or fail to make themselves fully understood; while these imperfections are removed when the jury is placed in the position of the observing witnesses, with all the opportunities of observation. As said in 2 Jones on Evidence, section 395: “For obvious reasons there is no class of evidence so convincing and satisfactory to a court or jury as that which is addressed directly to the senses of the court or jury. ” In patent cases experiments before the court and jury are constantly resorted to as a means of proving novelty of inventions and the principles of their construction and operation. And in the American notes to Taylor on Evidence, page 365,'. it is said that: “A particularly cogent method of proving a fact is to test its existence by experiments in open court.” True, the experiments in this case were not made in court; it was impractical to do so. Nor, without the consent of the *230 parties, could they have been ordered to be made elsewhere. But they were made out of court at the request of the defendant, in pursuance of an order procured by it, and under conditions which, to its satisfaction, constituted a sufficiently accurate representation of the occurrence that resulted in the death of the plaintiff’s intestate; and they were necessarily of the same probative character as if made in open court. They were intended to furnish information which the jury might use in determining the issues in the case, and which, indeed, might conclusively settle them in the minds of the jury. It would be a vain thing to attempt to require the jury to disregard the evidence so made manifest to their own senses.
We find ourselves unable to sustain either of the grounds on which the circuit court placed its judgment reversal.
It is urged, however, with much earnestness, that the correct judgment was rendered, because several other errors assigned required the reversal. We will notice but two of them, as they seem to be most relied uDon. One is, that the court erred in overruling a motion made by the defendant to compel plaintiff to elect between inconsistent causes of action. This motion appears to be based upon the evident misconception that the petition states two causes of action — one for purposely causing the death of Blum, and the other for causing it by negligence. The statute, (section 6134), gives the right of action against one who, (in its language) ‘ ‘by wrongful act, neglect or default,” causes the death of another, etc. The transaction or occurrence resulting m the death may consist of a number of co-operating acts and omissions, some of which may be willful or inten *231 tional, and others merely failures to observe the necessary care; and a plaintiff cannot be required to arrange the facts into these different classes, and plead each as a separate cause of action. Good pleading requires that he shall state as one cause of action all of the material facts of such wrongful act, neglect and default, whether they were willful, or negligent only, or whether they consist in part of wrongful acts purposely done, and in part in the neglect or default of the defendant; and he may recover upon sufficient proof of either, or of all combined.
Counsel for defendant in error devote a considerable portion of their brief to the discussion of their claim that the defendant is entitled to judgment on the special findings made by the jury in response to the interrogatories submitted at its request, and that the circuit court should not only have reversed the common pleas for that reason, but should have rendered final judgment for the defendant. There were a number of these interrogatories, thirty-six in all, relating mostly to the details of the location and surroundings of the crossing where the accident occurred, the number, width of, and distance between the tracks of the railroad, the presence or absence of obstructions and their proximity to the crossing, the conduct of the watchman in charge, at the time of the accident, and many other similar facts tending to show the manner of the accident and conduct of the parties; and it is the contention of counsel that the answers to these interrogatories conclusively established such negligence of the deceased contributing to his death as entitled the defendant to judgment, notwithstanding the general verdict. Without referring more particularly to the interrogatories or *232 answers, it may be said of them generally, that they are merely evidential, with pi-obably two exceptions, and none of them, nor all together are sufficient to raise a conclusion of contributory negligence, as matter of law. Some of them tend to prove contributory negligence on the part of the deceased, some tend to disprove it, and there was other material evidence on the subject, in regard to which no interrogatory was submitted, or finding made except as included in the general verdict.
The statute, (section 5201), which requires the court, when requested by either party to direct the jury to find specially upon particular questions of fact, seems to have been misunderstood. The “particular questions of fact” contemplated by the statute are such that the answers to them will establish ultimate and determinative facts, and not those which are only of a probative character; such facts as will enable the court in the application of the law, to determine the rights of the parties, and not those which simply tend to prove them. In arriving at their verdict the jury presumably agree upon the ultimate facts on which it is founded; and these the jury may be required to find specially in answer to pertinent interrogatories, in order that the court may determine whether they are sufficient to sustain the verdict. Anything beyond that is practically but a means of enforcing a disclosure of the process by which the jury arrive at their conclusions upon the ultimate facts, and is not within the purpose of the statute. In Railway Co. v. Dunleavy, 129 Ill., 132, 145, it is pertinently remarked by the court in discussing a statute not substantially different from ours, that the parties “ha ve no right, under the guise *233 of submitting questions to be found specially by the jury, to require them to give their view upon each item of evidence, and thus practically subject them to a cross examination of the entire case. Such practice would subserve no useful purpose, ■and would only tend to embarrass and obstruct the administration of justice; and we may further say such practice finds no warrant in our statute.”
By the general verdict the jury found the deceased was free from negligence contributing to his death, and there is no special finding which conclusively establishes the contrary.
We have considered all of the other questions argued by counsel, but deem it -unnecessary to notice them in the report of the case; Upon the whole record no errors are discovered which authorized the judgment of reversal by the circuit court; and its judgment is reversed, and that of the common pLeas affirmed.