82 605
f87 225
s184s386

82 605
106 8166

---

## Chicago & Alton R. R. Co. v. C. G. Pearson, Adm'r.

1. PLEADING—*Waiver of Objections to Declaration.*—Where a party pleads to the counts to which a demurrer has been overruled, he waives his objections to such counts.

2. SAME—*Insufficiency of Declaration—Motion in Arrest of Judgment When Unavailing.*—A motion in arrest of judgment based upon a

supposed insufficiency of the declaration is unavailing where a demurrer to the declaration has been overruled and pleas filed.

3. ORDINARY CARE—*In Running Trains.*—A railroad company, in the running of its trains, is always required to use ordinary care and prudence to guard against injury to the person or property of those who may be rightfully traveling upon the public highway, whether there is a statutory regulation upon the subject or not.

4. SAME—*Persons Bound to Use Ordinary Care to Avoid Danger.*— If by the exercise of ordinary care a person can discover his danger and avoid it, it is his duty to do so, and a neglect of such duty will bar a recovery.

5. SAME—*Defined.*—Ordinary care is that degree of care which persons of prudence are accustomed to use under the same or similar circumstances.

6. SAME—*A Question for the Jury.*—Whether or not a deceased person was in the exercise of ordinary care for his own safety, is a question of fact for the jury.

7. EVIDENCE—*As to Earnings of Deceased Person Proper.*—In an action by an administrator of a person killed by the negligent act of the defendant, evidence as to his earnings, financial condition, age and family, is proper.

8. DAMAGES—*Where the Court will Not Interfere on the Ground That They are Excessive.*—Where the proofs as to the earnings of the deceased are supplied, and two juries have fixed the same amount, unless the court can see that the verdict is the result of passion and prejudice, or is unreasonable, it will hesitate to interfere on the ground that the amount is excessive.

**Trespass on the Case,** for personal injuries. Trial in the Circuit Court of Livingston County; the Hon. GEORGE W. PATTON, Judge, presiding. Verdict and judgment for plaintiff; appeal by defendant. Heard in this court at the December term, 1898. Affirmed. Opinion filed May 19, 1899.

C. C. & L. F. STRAWN and ANTOINETTE FUNK, attorneys for appellant.

A. P. WRIGHT, M. E. WRIGHT and A. C. NORTON, attorneys for appellee.

A motion in arrest of judgment for insufficiency in a declaration is unavailable where the declaration has been demurred to and the demurrer is overruled. Shreffler v. Nadehoffer, 133 Ill. 536.

By abandoning a demurrer and pleading to the declaration, a defendant admits its sufficiency and can not after-

ward be heard to assign the decision upon the demurrer as error. C. & A. R. R. Co. v. Pearsons, 71 Ill. App. 622.

Mr. Justice Crabtree delivered the opinion of the court.

Appellee, as administrator of the estate of Ole B. Thompson, deceased, brought this action on the case against appellant to recover damages for the benefit of the next of kin of said deceased, alleged to have been sustained by them in consequence of the death of said Thompson, who was killed by one of appellant's freight trains at a street crossing in the village of Odell, on October 25, 1896. This case was before us on a former appeal, when a judgment for $5,000 against appellant was reversed, for errors then appearing in the record, as set forth in our opinion, reported in 71 Ill. App. 622. Being remanded to the Circuit Court the case was again tried, appellee obtaining a verdict of the jury for $5,000, upon which the court entered judgment after overruling motions for a new trial and in arrest of judgment. Appellant again brings the cause to this court and assigns for error that the verdict is not supported by the evidence; that the court erred in overruling the motion for a new trial and in arrest of judgment; that the verdict is contrary to the law, and that the judgment is contrary to the law and the evidence.

Inasmuch as there were fifty-six points in writing urged on the motion for a new trial, and fifty-five points on the motion in arrest, it is impossible, within the limits of an opinion of any reasonable length, that each should be considered and discussed separately, and we shall not undertake that labor. Many of these points we regard as super-technical, but the case being important we have given it the most careful attention and will consider such of its features as are of controlling force in its determination.

The original declaration contained seven counts. A demurrer was sustained to the first, fourth and sixth counts and overruled as to the others. A plea of not guilty was entered as to counts held good, and upon the issues as thus formed the cause was first tried. After the cause was

redocketed in the court below, the plaintiff, by leave of
court, filed eight additional counts, but on motion of the
defendant to strike out these additional counts, the court
required the plaintiff to designate four of them upon which
he would proceed, and thereupon the plaintiff designated
the first, third, fifth and seventh additional counts as those
he would rely on, together with the second, third, fifth and
seventh original counts. A demurrer was interposed to
these additional counts and sustained as to the seventh, but
overruled as to the first, third and fifth, and defendant plead
not guilty. The cause was thus tried upon the second, third,
fifth and seventh counts of the original declaration and the
first, third and fifth additional counts. Without particu-
larly specifying what each count contained, it is sufficient
to say that the several counts charged the careless and neg-
ligent operation of a locomotive engine and cars attached
thereto whereby Thompson was struck and killed; the neg-
ligent and careless obstruction of the view of the railroad
tracks from either side of the street crossing by railroad
cars, locomotives, cabooses, telegraph poles, smoke and
steam; the negligent failure to give the statutory signals,
and the running of the train at a high and dangerous rate
of speed. The several counts contained the usual averments
applicable to such charges of negligence. A considerable
portion of the argument of counsel for appellee is devoted
to the purpose of showing the insufficiency of this declara-
tion. As to that point we can only repeat what we said in
our former opinion in this case, that by pleading to the
counts to which a demurrer had been overruled, appellant
waived its objections thereto. After verdict we must hold
that the declaration in this case sufficiently set forth a cause
of action. And in this connection we may say, that so far
as the motion in arrest of judgment is based upon a sup-
posed insufficiency of the declaration, the point is not well
taken, because the rule is that a motion in arrest for such
reason is unavailing when the declaration has been demurred
to and the demurrer is overruled. Shreffler v. Nadehoffer,
133 Ill. 536; the Quincy Coal Co. v. Hood, Adm'r, 77 Ill. 68.

C. & A. R. R. Co. v Pearson.

The most serious question for our consideration is as to whether the evidence supports the verdict, and this brings us to a discussion of the facts in the case.

Appellant owns and operates a railroad, running northerly and southerly through the village of Odell, consisting of two main tracks and a side track, the latter being some eight feet easterly from the east main track. All of said tracks cross Hamilton street, the principal street in Odell, which is an incorporated village containing a population of about 1,000. The street and railroad tracks were nearly at right angles with each other. It appears that this street crossing was the one most generally used by the people of Odell, and it was here, while attempting to cross the tracks, that Thompson was killed. Southwesterly from this street, and distant therefrom some three car lengths, was the station building, located on the west side of the tracks. Some fourteen or fifteen feet north of Hamilton street was Vincent's grain office, twenty-six feet long north and south; and twenty-nine feet northerly therefrom was Vincent's grain warehouse, which with its wings extended about 100 feet along the track and being some six or seven feet from the side track. These are some of the buildings which it is claimed obstructed the view of the tracks. A part of the roadway over the tracks on Hamilton street was planked, the planking being about twenty-four feet long and extending to about twenty-six feet from the south line of Hamilton street and being continuous from the crossing to the passenger depot.

On the day that Thompson was killed quite a number of box cars stood upon the side track, extending south from the Vincent warehouse to Hamilton street, one of such cars standing partially over the sidewalk or footway on the north side of the street. South of Hamilton street other box cars occupied the side track, extending southerly from about the south line of the street, so that there was not much more than thirty feet of open space at the crossing of the street between the cars.

This is no doubt a sufficient statement of the situation

and surroundings of the crossing on Hamilton street to a fair understanding of the circumstances under which deceased came to his death.

It appears from the evidence that about twelve o'clock of that day Thompson had purchased a ticket over appellant's railroad to Pontiac and return, but the way freight upon which he was to ride being several hours late, he did not leave Odell at the expected time, but remained in the village waiting for his train. The hour of his death does not appear with certainty, but about fifteen minutes before the accident he was at the office of C. W. Carpenter, a justice of the peace, to whom he stated that he was going to Pontiac. Carpenter and deceased left the office together, the former going to the postoffice. Where Thompson went, or where he was from that time to the moment that he arrived at the crossing, does not appear, but when he reached the side track at the crossing, a through freight was going north on the west main track at a rate of speed concerning which there is a serious conflict in the testimony. Other persons were standing at the crossing waiting to pass over when the train should go by, and as the caboose or way car of the north-bound train cleared the crossing, Thompson stepped upon the easterly or south-bound main track, and at that instant a south-bound freight train came along and struck him with such force that he was thrown upward some ten feet and propelled forward a distance estimated by the witnesses at from forty to seventy feet, striking the ground at that distance southerly from the crossing, and thereby causing his death. There is a conflict in the testimony as to the rate of speed at which this south-bound train was running at the time it struck and killed deceased, some of the witnesses putting it at twenty-five, thirty and thirty-five miles per hour, while the trainmen in charge of the train place the speed at not more than eight to ten miles per hour.

It is contended that the testimony of the witnesses who swear to the high rate of speed is not reliable, because they only "guess" at the rate, while the trainmen, from their

occupation and daily familiarity with the speed of trains, are much more liable to be correct in their estimates. As a general proposition this may be so, but two juries have passed upon this case upon substantially the same evidence, and must have found the facts as to the rate of speed against appellant. There is a physical fact in the case which naturally had its weight with the jury, and that is that when Thompson was struck he was thrown into the air and propelled a distance of nearly or quite sixty feet, from the crossing. Jurors, in common with all others who are at all observing, will not readily believe a man can be struck by an engine and thrown sixty feet through the air when the train is moving at a speed of only eight or ten miles per hour. We think from all the evidence, and facts appearing in the evidence, the jury were warranted in believing that the train was running at a high rate of speed. But it is argued that there is no law in this State limiting the rate of speed at which a railroad company may run its trains, in the absence of municipal regulations, and that therefore no negligence can be imputed to appellant from the mere fact, if it be a fact, that the train in question was run at a high rate of speed. Counsel for appellant is undoubtedly correct in this contention, and we so held when this case was formerly before us, but this rule of law must always be understood with this limitation, that a railroad company, in the running of its trains, is always required to use ordinary care and prudence to guard against injury to the person or property of those who may be rightfully traveling upon the public highways, and this is so whether there is a statutory regulation upon the subject or not. (C., B. & Q. R. R. Co. v. Perkins, 125 Ill. 127.) There can be no question that at street crossings, in a populous city or village, where the public have a right to be, and where people are constantly passing and repassing, railroad companies should exercise a degree of dilligence commensurate with the danger, whether so provided by statute or not. It is a matter of common sense that greater care should be used in a crowed city or village, than in the rural districts, hence what may be a safe

and reasonable rate of speed in one locality may not be in another. Human life is too sacred to be exposed to unnecessary dangers, and while the running of trains through populous communities is one of the necessities of the present condition of commerce, those operating them must have due regard to the rights of others and the dangers of their operation. This is a duty, the neglect of which is actionable negligence. It is insisted, however, that deceased was so regardless of his own safety in stepping upon the track in front of a moving train, and therein guilty of such negligence that no recovery can be had. It is true and well settled law that if by the exercise of ordinary care deceased could have discovered the danger and avoided it, it was his duty to do so, and a neglect of such duty would bar a recovery. Whether or not the deceased was in the exercise of ordinary care for his own safety was a question of fact for the jury. Two juries have passed upon the same question and determined it against appellant; on the last trial it was found by the jury upon a special interrogatory propounded to them on that point. After a careful and laborious examination of the evidence, we do not feel justified in saying the jury were wrong. It is true others stood at the crossing with deceased, with perhaps no better opportunities of observing than he had, and yet saw the danger and avoided it. It does not necessarily follow he was guilty of negligence. The natural instinct of self-preservation is so strong it is not to be presumed deceased recklessly exposed his life to danger. Waiting at the crossing for the north-bound train to pass, it was not an unnatural thing for him to make a start as soon as the last car of that train cleared the roadway. No sooner had he stepped upon the track than the south-bound train struck him. There is no evidence he had seen it coming or heard its approach. Others had, and when he was seen to start they called out to warn him, but it was too late. There is nothing to show he heard the warning and refused to give heed thereto. The noise and confusion of the two trains was such that he may well not have heard. There was smoke and steam in the air, which to some

extent may have obscured the vision. At any rate he was caught and killed. There is the usual conflict in the evidence as to whether the statutory signals were given by ringing a bell or blowing a whistle. Whatever the fact may be, and it was for the jury to say, in the confusion arising before the passing of the two trains, even if the south-bound train gave the proper signals, deceased may have supposed them to come from the north-bound train without being guilty of negligence in so supposing. Under all the circumstances we are not prepared to hold that the want of due care on the part of deceased so clearly appears that we ought to reverse the case on that ground, when two juries have found the same way. A motion was made by defendant below to strike out all evidence as to the north-bound train, and also as to the existence of smoke and steam in the air at the time of the collision, but such motions were overruled, and it is claimed this was error. We think the ruling of the court was right, and that the evidence was proper to be considered by the jury regardless of the question as to whether these matters were alleged in the declaration. Upon the question of due care on the part of deceased, it was eminently proper that the jury should be apprised of all the circumstances by which he was surrounded at the time he was struck, so that they might put themselves in his place, and by their knowledge of what ordinarily prudent men would be expected to do under like circumstances, be enabled to judge intelligently as to his conduct. It was also proper, as bearing upon the question as to whether appellant was negligent in running its trains under all the circumtances then appearing.

It is contended that the court improperly allowed evidence as to the earnings of deceased. This evidence showed that he earned from $1.25 to $5 per day, according to the kind of work he was engaged in. He was a man of small means, earning a living mostly by his daily labor. Sometimes he worked for others by the day, and occasionally he took jobs of laying tile, at which he sometimes made as high as $5 per day. He was about forty-two or forty-three

years old at the time of his death, and had a wife and six children depending upon him for support. Another child was born after his death. We think the evidence was proper. C. & N. W. Ry. Co. v. Moranda, 93 Ill. 302.

On cross-examination of appellee, he was asked by counsel for appellant whether deceased was a drinking man, and the court sustained an objection thereto. As this was not proper cross-examination the ruling was right. Nor was there any reversible error in allowing proof that there was a horse fair in Odell on the day of the accident. We can not see how it could possibly have harmed appellant in any view of the case. Other objections to the rulings of the court upon the evidence are not well taken.

There was no error in allowing an amendment to the declaration alleging the existence of smoke and steam. As we have already seen, the evidence as to smoke and steam was competent, whether in the declaration or not, and amending the declaration so as to allege it could do no harm. It is insisted that the damages are excessive, and the case of I. C. R. R. Co. v. Weldon, 52 Ill. 290, is cited in support of this contention. We do not regard that case as being of controlling force in this.

There was no proof in that case of the earnings of Weldon, the deceased. Here the proofs are supplied, and we are not prepared to say the damages are excessive, in view of the evidence as to the earnings of deceased, the size of the family dependent upon him, and the fact that two juries have fixed the same amount. It is for the jury to assess the damages, and unless the court of review can see that the verdict is the result of passion and prejudice, or is unreasonable, it will hesitate to interfere on the ground that the amount fixed is excessive.

There was no error in refusing to exclude the evidence and direct a verdict for the defendant. There was certainly evidence sufficient to go to the jury upon the questions of fact so that the court would not have been warranted in withdrawing it from their consideration.

We are of the opinion there was no error on the part of

the court in its action on the special findings which appellant desired submitted to the jury. Counsel for appellant concedes it was not error to refuse the first and third special interrogatories but insists it was error to refuse the second and fourth.

The second was as follows:

"Was what Thompson did, if anything, to ascertain if a train was approaching, what an ordinarily and reasonably prudent man would have done under the same circumstances?"

The fourth was as follows:

"Would an ordinarily and reasonably prudent man, under the circumstances existing at the crossing, have stepped upon the track without first looking to see if the train was approaching?"

In place of these interrogatories which the court refused to submit, the court, of its own motion, prepared and submitted the following:

"Was Ole B. Thompson, in view of the physical surroundings at the time of the injury, then in the exercise of ordinary care for his own safety?"

Under the authority of C. & N. W. Ry. Co. v. Dunleavy, 129 Ill. 132, we think the action of the court was proper. The reasoning and principles of that case are applicable to the case at bar and need not be here repeated. The ultimate fact which was in issue, was submitted to the jury, and that is all appellant was entitled to.

Complaint is made of the first instruction given on behalf of appellee, which is as follows:

"You are instructed that the law did not require of the deceased the exercise of an extraordinary degree of care. All that was required of him was the exercise of ordinary care, and what is ordinary care depends upon the circumstances of each particular case, and is such care as a person of ordinary prudence and intelligence would usually exercise under the same or similar circumstances."

The objection is as to the words "intelligence" and "usually." We are of the opinion the instruction is not erroneous on account of those words being contained therein.

It is difficult to understand how a person can exercise ordinary care, without being possessed of ordinary intelligence. Those who are *non compos* are not expected to exercise care or discretion, but in those who possess ordinary intelligence, we look for a use of their faculties in avoiding danger. We can not agree with counsel for appellant that intelligence has nothing to do with prudence.

As to the word " usually," it is not uncommon to find words of similar import in definitions of ordinary care. For instance, in Note 1 to Sec. 31 of Shearman and Redfield on Negligence, it is said :

" Ordinary care has been defined with special reference to the doctrine of contributory negligence, as ' that degree of care which persons of ordinary care and prudence are accustomed to use and employ, under the same or similar circumstances.' " Citing Cleveland, etc., R. Co. v. Terry, 8 Ohio St. 570–581.

Here the word "accustomed " is used in a sense synonymous with the word " usually."

The only way we can judge as to what ordinarily prudent men will be likely to do under a given state of circumstances, is by observing what such men usually do under the same or similar conditions. Without prolonging the argument we hold the instruction was not erroneous. The objections to the giving or refusing other instructions are not well taken. The jury were very fully instructed on every branch of the case; appellant had all the benefit in that respect that it was entitled to, and we think has no just cause of complaint on that score.

Finding no material error in the record, the judgment must be affirmed.