## John L. Scranton, Appellee, v. Chicago & Alton Railroad Company, Appellant.

1. NEGLIGENCE—*as to crossing signals.* Held, under the evidence, that it was for the jury to determine the questions of fact whether the crossing signals were given or whether whistles were blown at or near the crossing, etc.

2. NEGLIGENCE—*how proximate cause determined.* Held, under the evidence, that it was for the jury to determine what was the proximate cause of the injury complained of.

3. CONTRIBUTORY NEGLIGENCE—*approaching railroad crossing.* Held, under the evidence, that it was for the jury to determine whether the plaintiff was in the exercise of ordinary care in approaching the crossing under the circumstances shown by such evidence.

4. CONTRIBUTORY NEGLIGENCE—*what not as a matter of law.* The omission of a person to look and listen as he approaches a railroad crossing, will not bar a right of recovery in the case of a collision resulting in injury, if the circumstances previous to the injury would absolve the person from the necessity to look and listen.

Action in case for personal injuries. Appeal from the Circuit Court of Pike county; the Hon. HARRY HIGBEE, Judge, presiding. Heard in this court at the May term, 1911. Affirmed. Opinion filed October 9, 1911. Rehearing denied November 8, 1911. Certiorari denied by Supreme Court (making opinion final).

W. H. CROW and WILLIAM MUMFORD, for appellant.

W. E. and A. CLAY WILLIAMS, for appellee.

MR. JUSTICE FROST delivered the opinion of the court.

This is an appeal from a judgment for $5000 obtained by appellee against appellant for a personal injury sustained by appellee at a highway crossing over appellant's track, about a mile east of the village of Nebo in Pike county. Defendant's track at the point of the accident runs practically east and west, and is in the center of its right of way, which is 100 feet wide, and is on a downgrade towards said village of Nebo, but is elevated where it crosses the highway from 12 to 14 feet above the level of the surrounding country. The highway approaches the track from the south with a steep grade or embankment, having a rough and uneven surface, and covered with large stones. On the day in question, appellee, who lived a few rods south of the track, started from a point about one-fourth of a mile south of the track, with a heavy load of dirt, and with a team consisting of a horse and a mule. When he reached a point at about the south line of the right of way, he stopped his team, as he says, and listened for the cars; that he heard no bell or whistle and that he then started up the embankment. From that point on, appellee was watching his team to avoid the obstructions in the highway, and when he came to the crossing, he heard the engine whistle about ninety feet east of the crossing; that he instantly pulled back his team, and just as the engine reached the crossing, two shrill blasts or "toots," as he called them of the whistle were blown, causing the mule of his team to rear and plunge to the left, and thereby appellee was thrown from his wagon and injured. Appellee's principal claims of negligence upon the part of appellant, are the failure to give the statutory crossing signals, approaching the highway at a high rate of speed, and blowing the engine whistle so near the highway that it frightened his team. Upon the questions whether crossing signals were given or whistles blown at or near the crossing, and the speed

of the train, the evidence is contradictory. Appellee testified that he heard no bell or whistle until the train was within ninety feet of the crossing. Charles Stark and John Wilson testified that they were in an orchard from 30 to 50 rods north of the track and about 87 feet east of the crossing; that as the train emerged from a cut nearly one-half mile east of the crossing they particularly observed to see whether the signals would be given; that no signals were given at the whistling post or any bell rung or any whistle sounded at any point from the whistling post west until the train reached a cattle-guard 98 feet east of the highway, when the whistle was sounded once; that the train was running at the rate of about 40 to 50 miles per hour. Bert Scranton, son of appellee, who had assisted his father to load the dirt, stood at a point east of the highway, about 70 rods from the crossing and about 80 rods from the whistling post. He testified that he particularly observed the train to see whether or not it would give the statutory signals, as he knew his father was driving toward the track and that he had had about time to reach it; that his view was unobstructed; that no signal was given at the whistling post or at any point west of it until the train reached the cattle-guard, when a whistle was blown; that the train was running at about 30 or 40 miles an hour. Ernest Miller, who was driving in a buggy west on a road about one-quarter of a mile south of the railroad, and fifteen rods east of the highway, testified he heard the train coming from the east; that he did not hear any bell or whistle until about near the crossing; train was running at a good speed and seemed to be gliding down grade. George W. Autrey testified he was about 180 rods southeast of the train when it reached the whistling post; he did not hear a bell or whistle; train was coasting and made no noise, nor emitting any steam or smoke. W. C. Oliver, defendant's engineer,

testified the train was drifting down grade at about 30 miles per hour; that he blew the engine whistle at the whistling post, and that the bell was ringing continuously from the post to the crossing; that he did not blow a whistle at the crossing. Scarborough, the fireman, testified the engineer blew the whistle at the whistling post, but not at or near the crossing; that he rung the bell continuously from the post to the crossing. Hanback, head brakeman, testified to the same effect. Read, the conductor, heard the whistle east of the crossing, which he took for a crossing signal. Ooots, the rear-brakeman, testified practically the same as the head brakeman.

It was for the jury to determine the questions of fact whether the crossing signals were given or whether whistles were blown at or near the crossing, and the speed of the train. We cannot say that their conclusion was wrong.

There was much testimony in the record as to the physical condition surrounding appellee at the time with reference to the presence or absence of obstructions to his view of the train from different points east as it approached the crossing, and as to his ability to have observed the train after he had looked and listened as he says at the south line of the right of way, but we do not think it necessary to discuss it in this opinion. It was for the jury to determine from all the evidence whether appellee was in the exercise of ordinary care in approaching the crossing under the circumstances, taking into consideration the facts, if such were the facts, that before he started up the grade 50 feet from the track he looked and listened for the train; that his attention was directed to avoiding stones in the highway; that no signals were given at the whistling post or at any place west thereof until about 90 feet west of the crossing; that the train was coming down grade at a high rate of speed without warning.

We think the evidence sufficient to justify the jury in finding that appellee was exercising ordinary care under the circumstances. The omission of a person to look and listen as he approaches a railroad crossing, will not bar a right of recovery in the case of a collision resulting in injury, if the circumstances previous to the injury would absolve the person from the necessity to look and listen. Henry v. C. C. C. & St. L. Ry. Co., 236 Ill. 219; Chicago & Alton R. R. Co. v. Pearson, 184 Ill. 386.

There may be various modifying circumstances excusing the party from looking and listening, and that being the case, a mere failure to look or listen cannot be pronounced negligence *per se.* C. & N. W. Ry. Co. v. Dunleavy, 129 Ill. 132.

It was also a question for the jury to find the proximate cause of the injury, whether it was the failure of appellant to give the statutory signals, or the management of the train at the crossing with reference to speed and sounding the whistle or bell. Proximate cause may be deduced from a failure to give statutory signals. The jury had the right to conclude that if they had been given at the usual place and in the required manner, appellee would have heard them, and would not have approached so near the track, that the motion of a train or sound of the whistle or any other cause would not have had any disturbing effect upon his team, and in that event no injury would have occurred. Or the jury may have found that running the train at a high rate of speed down grade over a dangerous crossing, and sounding the whistle as it passed appellee's team, was the proximate cause. There is sufficient evidence in the record to sustain them in either of these conclusions.

Appellant complains of the action of the Circuit Court in refusing certain of its instructions, and have discussed in their brief refused instructions nine, ten,

eighteen and twenty-one. Instructions nine and ten required plaintiff to stop his team and listen before he approached the crossing. Instructions eighteen and twenty-one required him to look east some time after he approached the crossing. Under the authorities cited these instructions do not state the law correctly, and there was no error in refusing them.

Finding no error in the record, the judgment must be affirmed.

*Affirmed.*