Mallen v. Waldowski.

Herman Z. Mallen et al. v. Adolph Waldowski.

1. MASTER AND SERVANT—*Failure of a Skilled Servant to Aid an Unskilled Servant When Directed by the Master, to be Imputed to Such Master.*—Where a master undertakes to aid an unskilled servant by referring him to another servant who is skilled in such employment, and such servant fails to render the required aid as directed, such failure will be imputed to the master.

2. SAME—*What Risks Not Assumed.*—A servant does not assume risks which are unusual or extraordinary to the employment, nor risks of the master's own negligence.

3. SAME—*The Fact that a Machine Works Improperly Makes it a Defective Machine.*—The fact that a master furnishes the servant a machine which works improperly, makes it a defective machine, irrespective of the cause.

**Trespass on the Case.**—Personal injuries. Appeal from the Superior Court of Cook County; the Hon. MARCUS KAVANAGH, Judge, presiding. Heard in this court at the October term, 1901. Affirmed. Opinion filed March 31, 1902. Rehearing denied April 14, 1902.

Appellee brought this suit to recover damages sustained, as it is claimed, through negligence of appellants, his employers.

The *narr.* consisted of two counts. The first count charged negligence in putting appellee at work outside of his regular employment, and upon machinery with which he was unacquainted, through which, by reason of his inexperience, he was injured, etc. The second count charged negligence in that appellants permitted a rip-saw upon which appellee was engaged to work to be in an unsafe condition, knowing it to be unsafe, whereby appellee was injured, etc.

The evidence discloses that appellee entered appellants' employ some time in the month of September and worked there until the 21st day of the following December, when he was injured. During this period of time he worked on four different wood-working machines; working first on a rip-saw and on a planer as a second man or assistant to the man in charge, doing this work for a period of about two months. After these two months he was given charge of another rip-saw, and of a swing-saw. On these two machines he worked for several weeks, up to the day of the injury. The rip-saw which he worked upon during the two months that he was an assistant was of somewhat the same character as the smaller rip-saw which he worked on at the time of the injury. The difference between the two rip-saws was that the first one was much larger, and was so constructed that it could be fed automatically, or fed by

hand, as the operator desired, and as the character of the work might necessitate, the heavier work being fed in automatically, and the lighter work being fed by hand.

The rip-saw in question was mounted on a table supported by a wooden frame, at the upper portion of which was a small revolving shaft, just beneath the surface of the table, which shaft was turned by steam power through the usual means of belt and pulley. On this small shaft was an arbor upon which the saw proper was fitted, and when in proper position for work the saw was so placed that a portion of it extended up through the top of the table. By means of a crank wheel the operator could raise or lower the table so as to expose more or less of the saw, as the needs of his work might require. The arbor of the saw was so arranged that one portion of it could be removed and the saw taken off 'by the operator whenever it needed filing or setting. The machine was supplied with three or four saws, any one of which could be used as it was needed. There were three different sizes of rip-saws, and at least one cross-cut saw that belonged to this machine. While one of the saws was being used, the other three hung upon a nail on an adjacent post. These saws could be changed by the operator, and sometimes were changed as frequently as three or four times a day. When a saw would get dull the operator would take it off the arbor and give it to the saw-filer, whose duty was to sharpen and set the saw; and when the saw-filer had performed his work on it, he would take it back and hang it on the nail at the post near the machine, where the operator could get it when he needed it again.

Appellee's work consisted of placing the piece of board to be sawed upon the table in such position that one end or one side of it would rest squarely against the gauge, then shoving the material toward the revolving saw and on past it as the saw cut its way through. At the time of his injury appellee was working on pieces of material which were about nineteen inches long, one and three-quarters inches thick and of various widths. The work to be done

on these pieces of material was sawing out a corner and then ripping the whole piece into smaller pieces. At the immediate time of his injury appellee ripped the original piece into thin slices without first taking out the corner, then attempted to remove the corner from each of the thin slats or slices, and he attempted to add to the stability by putting several of them together, and holding them together with his hands. Then he attempted to take the corners out of these several pieces at once. As he attempted to do this, the saw in some way caught the pieces and threw his hands against the teeth of the revolving saw, causing his injury.

Appellee states that the machine was right in every particular, except that the blade which was then on the arbor needed to be sharpened and set. Appellee also states that he knew that large pieces were more stable than small pieces; that he could not take the corner out of small pieces as well as he could out of a large piece; and states that for this reason he put four or five of the smaller pieces together at the time he was injured, in order to have a broader surface and firmer piece of wood for the saw to work against.

At the time appellee was set at work upon the machine by which he was afterward injured, he said to appellants' foreman that " he did not know much about the machine; had never worked at any." To this the foreman replied, directing appellee to go to work, and that at any time when he did not know how to do the work he should go to Herwald, an experienced workman, and the latter would show him, and if anything was wrong with the machinery he should report to Sherwood, the machinist. Appellee testifies that he did complain to Sherwood that the saw " kicked back;" that this complaint was made twice, once three days before the injury and once upon the day before the injury; that Sherwood did nothing to remedy the trouble. He also testified that on the day before the injury he called the attention of Herwald to the fact that the saw " kicked back," and that Herwald tried the saw and told him to get Sherwood to sharpen and set it. Herwald corroborates

Mallen v. Waldowski.

appellee in this, except that he denies having tried the saw. Sherwood testifies that he does not remember that appellee talked to him about the saw the day before the injury.

The injury to appellee consisted in the loss of parts of the second and third fingers and injury to the fourth finger of the right hand.

The issues were submitted to a jury and a verdict was returned in favor of appellee by which his damages were assessed at $2,500. From judgment upon that verdict this appeal is prosecuted.

O. W. DYNES, attorney for appellants.

THEODORE G. CASE and MUNSON T. CASE, attorneys for appellee.

MR. JUSTICE SEARS delivered the opinion of the court.

No other witness was called on behalf of appellee save appellee himself. He was, however, corroborated in some respects by the testimony of witnesses called by appellants. Conrad, the foreman, corroborated him in that he testified that he gave appellee some instructions, but could not recall what the instructions were. Herwald corroborated appellee as to a complaint on the day before the injury, to the effect that the saw did not work properly. There was other evidence on behalf of appellants, which, if credited, would tend to defeat a recovery. But Mallen, who testified that he had found the saw on appellee's machine to be in good condition after the injury, admitted that the saws might have been changed between the time of the injury and his examination of the saw. The testimony of Dafkowski might have been entirely discredited by the jury upon the ground of a lack of intelligence upon his part. He testified that the saw when working made six or seven revolutions per minute. Upon the whole, the evidence was conflicting and of such a nature that we can not say that the verdict finding the issues for appellee is manifestly against the weight of the evidence. If appellants, through their foreman, put appellee at work upon machinery with which he was unfa-

miliar, directing him to go to Herwald and Sherwood for aid in case he had trouble with his work, and if, when appellee did have trouble because of the defective operation of the saw, and then went to Herwald and Sherwood for help, they did nothing for him, but left him, with his inexperience, to manage the machine in its defective condition as best he could, then there was ground for imputing negligence to appellants. It does not matter that Herwald was in his ordinary occupation a fellow-servant with appellee, for in this particular instance he was delegated by the master to act for him in aiding and instructing appellee. Sherwood, who also failed to act when complaint was made to him that the machine worked improperly, was not a fellow-servant. Nor does it matter that the machine was in good condition save that the saw was dull. The evidence warrants the conclusion that the dullness of the saw caused it to "kick back" and thus caused the injury. Whatever the cause, for some reason the saw did "kick back," and it was just such an emergency that the master undertook to provide against by referring his unskilled servant to those who were skilled. The skilled servants, Herwald and Sherwood, to whom appellee was thus referred, failed in the duty which the master had thus delegated to them. In relation to the unskilled employe, who undertook the hazardous employment in reliance upon this direction by the employer, the failure of Herwald and Sherwood must be imputed as the failure of the master. The very fact that the machine worked improperly, irrespective of the cause, made it a defective machine. Norton Bros. v. Sczpurak, 70 Ill. App. 686.

We are of opinion that the learned trial court did not err in holding that the liability of appellant was a question to be submitted to the jury, and that the evidence did not conclusively establish contributory negligence or assumption of the hazard upon the part of appellee.

It is complained that an instruction, purporting to present to the jury the elements essential to a recovery, is erroneous in that it omits reference to the doctrine of assumed hazard.

The decision in City v. Kostka, 190 Ill. 130, disposes of this contention.

The court refused certain instructions tendered by appellants. The first (in order presented by brief) is abstract, and hence there was no error in refusing it. The second is sufficiently covered by others given. The third is bad in that it informs the jury that a certain fact, singling it out, does not constitute negligence. The fourth is bad because under the proof, Sherwood and appellee were not fellow-servants. The fifth is bad because there was no evidence to warrant it; that is to say, there was no evidence that appellee "neglected to obey instructions." We find no error in the seventh instruction given by the court at the instance of appellee.

It is complained that the court erred in refusing to submit the following interrogatory to the jury for a special finding : " Do you believe from the evidence that Sherwood was negligent in failing to set or sharpen the saw, and that such negligence was the proximate cause of plaintiff's injury ? " The fact upon which the belief of the jury is asked (without limitation as to the basis of such belief) is an evidentiary and not an ultimate fact. It still left the question of Sherwood's relations to the appellants unsettled, upon which relationship the ultimate fact of appellants' actionable negligence would depend. Not being an ultimate fact, it was not error to refuse an interrogatory regarding it. (C. & N. W. Ry. Co. v. Dunleavy, 129 Ill. 132.) No other questions are presented by the briefs. The judgment is affirmed.