# Elizabeth Ratkowski, by John Ratkowski, Appellee, v. R. J. Kittredge & Company, Appellant.

## Gen. No. 23,160.

1. MASTER AND SERVANT, § 690*—*when evidence shows machine to be defective.* Evidence *held* to warrant the finding that the machine upon which plaintiff was employed in defendant's machine shop at the time she was injured was defective, and to establish almost a case of *res ipsa loquitur*, where her testimony that she had complained of it to the foreman the same morning was undenied, notwithstanding other witnesses who saw the machine immediately after the accident testified it was in good condition.

2. MASTER AND SERVANT, § 361*—*when servant does not assume risk of injury from machinery.* Where plaintiff, an employee in defendant's machine shop, was between 15 and 16 years of age, young and inexperienced, and not sufficiently familiar with the complicated and swiftly-moving apparatus upon which she was working when she received her injury complained of to appreciate and realize the danger to which she was exposed in so working, *held* that she did not assume the risk in continuing work after discovering the machine did not do its work properly and reporting it to the foreman of the shop, her complaint not appearing to arise from the thought that she was in personal danger.

3. WITNESSES, § 239*—*what evidence is admissible on redirect examination.* Where defendant's adjuster testified on cross-exam-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

ination, in an action by a servant for personal injuries, that nothing was said about an adjustment of plaintiff's case at the time plaintiff signed a certain statement purporting to set forth a history of her accident, *held* that other parts of the conversation were admissible on redirect examination with a view to showing plaintiff's reason for signing the statement.

Appeal from the Circuit Court of Cook county; the Hon. OSCAR M. TORRISON, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1917. Affirmed. Opinion filed December 28, 1917. Rehearing denied January 10, 1918.

JOHN A. BLOOMINGSTON, for appellant.

THURMAN, HUME & KENNEDY, for appellee.

MR. PRESIDING JUSTICE TAYLOR delivered the opinion of the court.

This is an appeal from a judgment for $1,000, in a personal injury case in the Circuit Court, in favor of the appellee. The declaration, which consisted of one count, charged that the defendant (appellant) conducted a certain machine shop, in which it used a certain power-driven machine, known as a press machine; that "it then and there became and was the duty of the defendant to use reasonable care and diligence to have and keep said machine in good repair so as not to be dangerous to employees working thereon"; that in violation of its duty it "carelessly and negligently permitted said machine to become unsafe * * * to become broken, loose and out of order, and dangerous to employees working thereon, all of which was known to the defendant and unknown to the plaintiff," in consequence of which defective condition of said machine, "and while she was exercising due care, and at the command and direction of said defendant, working upon said machine, her left hand was caught by and pulled into said machine" and seriously injured. The defendant pleaded the general issue.

On February 23, 1912, appellee, a girl between 15 and 16 years of age, was working for appellant on a

Rotary Bag Printing Press, which was being used to print paper bags. She had been doing that kind of work off and on for about 3 months. One John Kreider (assistant foreman, according to the testimony of Kittredge, secretary of the appellant) had charge of the presses at the shop and put appellee to work on the press in question. In the record there is a blue print which represents the press, with the exception of certain guides. The machine is a rotary bag printing press to print bags of flat sheets with words or figures, or anything that type will make. The machine is so arranged that one stands at the side of the table, which is part of the machine, and, ordinarily, takes a bag, with the left hand, from a pile, and, with the right hand, presses it towards certain guides and holds it there until certain grippers, which work automatically and are set in a depression in the large cylinder, which is parallel to the table, grip the 'end of the bag against the cylinder, which latter, revolving upwards and away from the table, takes the bag on its surface until it reaches the printing roll and is printed and then dropped below. The gripper is a small piece of brass which turns back on the cylinder and is so arranged that when the cylinder gets to a certain position the gripper is made to go forward and then grip the paper onto the cylinder. The gripper is fastened on a rod that runs through the cylinder. The rod or shaft is attached to the cylinder and is driven on the end by a small gear and rack, which makes the shaft rotate automatically. The gripper squeezes the end of the bag onto the cylinder and the latter takes it away with it around the cylinder and on beneath the face of the cylinder which makes the impression. The bags being printed by appellee were about 3½" by 9". Certain guides moved up and down automatically on extensions of the table, which projected within about 2 inches of the cylinder. At high speed the main cylinder made about 50 revolutions a

minute and would print 50 bags in that time. The bag is slipped, or pressed, towards the guides and then taken by the grippers with a rapid motion. The guides are about 2½ inches apart. In feeding the bag, the hand is laid flat on the bag, the bag being on the table, and it is held flat as it is pushed forward, as there is a tendency to raïse it up. The bag being held flat, the gripper takes it and the hand is supposed then to be coincidentally raised.

On the day in question, when the appellee was working on the machine and feeding bags into the press, it is claimed by her that "the press kept jerking and the nippers would pinch my fingers  *  *  *  was jerking so it would not take the bags"; that she had to hold them down with her hands "so that the nippers would come around and take the bags"; that she was feeding a bag into the press and the press was jerking, and that particular bag wouldn't go into the press; that she held it down with her hand and "the nippers came and snatched my fingers right with the bag into the press, and my entire hand was in the press, so that it smashed the three joints in my fingers, and the index finger was smashed and the second joint" of her left hand. On the morning in question, February 23, 1912, she was directed to work, on the press in question, by John Kreider, a pressman, or, as he was entitled by secretary of appellant, "Assistant Foreman." Part of his duty was to repair presses in case anything went wrong with them. On that morning, before the accident, appellee told Kreider that the press was out of order; and twice she asked him to fix it. He looked at the press but, apparently, did nothing except tell her to do the best she could with it.

It would seem, from the evidence, that, at the time of the injury, appellee was feeding the last bag into the press, and there is some question whether, at that time, she was getting ready, with her right hand, to use the lever, which was at her right, under the table,

to stop the machine, inasmuch as it was the left hand
that was injured, she was, unquestionably, feeding the
bag into the press with that hand, although, common-
ly, the bags were picked off from the pile with the left
hand and introduced into the press with the right
hand. She testified that when the machine was work-
ing properly, the bags were taken smoothly; but that,
on the morning in question, she had to stop the press
quite frequently, because it was not working well. Of
course, no one saw the accident but appellee herself.
Several witnesses for appellant stated that they ex-
amined the machine shortly after the accident and
that it was in good condition.

Some evidence was offered in regard to a written
statement, presented by an adjuster, signed by appel-
lee, which, however, appellee testified that she did not
read before signing.

It is claimed by the appellant (1) that the prepon-
derance of the evidence was in favor of the defendant
as a matter of law; (2) that the plaintiff assumed the
risk; (3) that the court erred in the admission of evi-
dence; (4) that the court erred in regard to certain
instructions. The declaration makes the charge that
the defendant furnished a defective machine and, in
violation of its duty, "negligently permitted said ma-
chine to become unsafe   *   *   *   to work upon   *   *   *
and dangerous to employees working thereon, all of
which was known to the defendant and unknown to the
plaintiff, in consequence of which defective condition
*   *   *   and while the plaintiff" when exercising due
care "and at the command and direction of said de-
fendant, was working upon said machine, her left hand
was caught by and pulled into said machine," etc.

Three questions arise: (1) Was the machine de-
fective? (2) Was the plaintiff ignorant of it? (3)
Did the defendant know of it? There seems to be
ample evidence to justify the conclusion that the ma-
chine was defective. It is almost a case of *res ipsa*

*loquitur.* The fact that three witnesses, who examined the machine almost immediately after the accident, say it was in good condition, does not necessarily prove in the face of appellee's testimony and her injury that the machine did not unexpectedly jerk and act in a defective way so as to cause the injury without negligence on the part of the appellee. Then, too, the fact that appellee complained several times that morning to the pressman, which is not denied, is some evidence that the press was defective. And it is not denied that he, in answer to her complaint, told her to do the best she could. As to knowledge of the condition of the machine, the evidence sufficiently shows that appellant knew, the morning in question, that it was not operating properly and was, therefore, defective. As to the plaintiff's knowledge, it is obvious, from the evidence, that she knew it was not taking in the bags smoothly, and, therefore, was not running well; but it is just as obvious that she, a young and inexperienced girl, was not sufficiently familiar with the mechanism and motions of the grippers and guides, and the operation of the cylinder—the whole constituting a complicated and swiftly-moving apparatus—to appreciate and realize the danger to which she was exposed.

When she complained that the machine jerked, being, as her evidence shows, ignorant of the mechanism of the press, it cannot reasonably be inferred that, at that time, she had any knowledge that there was imminent danger of injury to herself. Her complaint to the assistant foreman seems to have had its origin in her experience that morning, that the machine, from time to time, failed to do the necessary work in the expected way, that is, take the bags smoothly, and not in the thought that she was in danger of personal injury. So the claim that appellee assumed the risk, we are of the opinion, is untenable, as it is obvious that, as far as the knowledge of the appellee is concerned, the danger was not so imminent that she "should have

quit the service rather than incur the risk." The case, then, is one of a defective machine, where, in our opinion, there is ample evidence which is consistent with the charge in the declaration and with the verdict. The declaration charged that the machine was defective, and evidence was offered to that effect, and the jury have found that that was established. In *Norton Brothers v. Sczpurak*, 70 Ill. App. 686, the court said: "It is very strenuously urged by counsel for appellant that the expert evidence showed conclusively that the machine could not have been operated as indicated by the evidence for appellee. It is enough to say that the jury from the evidence believed the theory of appellee as to what was, rather than the theory of the experts as to what could not have been." *Mallen v. Waldowski*, 101 Ill. App. 367.

Inasmuch, therefore, (1) as the evidence was sufficient to sustain the declaration, and to justify the jury in finding that the appellant had knowledge that the machine was defective, in that it worked improperly; (2) that appellant, notwithstanding such knowledge, and, without warning to appellee, had appellee work upon the machine; and (3) that appellee, without fault upon her part, and without having knowingly and voluntarily assumed, as an ordinary hazard of her employment, the danger to which she was thus exposed, and thereby injured, the finding of the jury should stand.

It is further contended by appellant that the court erred in admitting in evidence certain statements of appellee—when asked by an adjuster to sign a paper purporting to set forth the history of the accident—that the appellant wished to settle with her. If the adjuster stated to her, at the time, that the company was "willing to settle" with her, and "willing to give" her some money, in order to persuade her to sign the paper, the testimony was competent. However, upon the examination of the adjuster, by the ap-

pellant, for whom he was called, he was asked, elaborately, as to what appellee said to him concerning the accident, and then, on cross-examination, he stated, without objection being made, "Nothing was said about the adjustment of the case," so that it could not thereafter reasonably be urged that it was error for appellee to put in other parts of that conversation with a view to showing, if possible, a reason for signing the paper. As to the evidence that the guides were subsequently changed, it was brought out on the cross-examination of appellant's witness, and was not objected to. We do not find any material error in the instructions. They were elaborate and all save one presented by the appellant, and were, on the whole, much more favorable to appellant than appellee.

Finding no error in the record the judgment is affirmed.

*Affirmed.*